# HELEN M. DALY

## *vs.*

## PATRICK DALY.

*Insurance—Change of Beneficiary—Intention Given Effect.*

In the case of a group life insurance policy issued to an employer for the benefit of its employees, where one of the latter, upon his marriage, applied to have the name of the beneficiary in his certificate of insurance under such policy changed from that of his father to that of his wife, but the change was not made owing to the lack of proper blanks and the oversight of the employer's agent, *held* that equity would regard the change as having been made, the insurance company interposing no objection, and the rules of the employer requiring the wife of an employee to be named as the beneficiary of his insurance.

*Decided March 3rd, 1921.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Alexander Preston,* for the appellant.

*Addison E. Mulliken* and *F. Stanley Porter,* for the appellee.

THOMAS, J., delivered the opinion of the court.

On or about the 15th of April, 1918, the Equitable Life Assurance Society of the United States, a body corporate of the State of New York, issued to the Standard Oil Company, of New Jersey, what is called a policy of "group insurance" on the lives of such employees of the Standard Oil Company,

called the employer, "as are enumerated on the record known
as 'Insurance Register' of the Standard Oil Company kept
by the society in the amounts set opposite their respective
names, for the term of one year from the date hereof, or for
such part of said term as they shall respectively remain in
the employment of the employer," and agreed, on receipt of
due proof of death during said term of any such employee,
to pay, at its office in the City of New York, the amount "for
which such employee's life is insured as aforesaid, to the
beneficiary designated by such employee as entitled to receive
the same." Among the provisions of said policy were the
following:

"Change of Beneficiary.

"Any employee may from time to time during the
continuance of this policy change the beneficiary by a
written request (upon the society's blank) filed at its
home office, but such change shall take effect only upon
the receipt of the request for change at the home office
of the society. No assignment by the employee of the
insurance under this policy shall be valid."

"The Contract.

"This policy, together with the employer's applica-
tion therefor, copy of which is attached hereto, and the
insurance register herein referred to, a copy of the
form of which is attached hereto, shall constitute the
entire contract between the parties."

Some time in the summer of 1918, and after the latter
part of July, Charles A. Daly, of Baltimore City, Maryland,
who had been in the employ of the Standard Oil Company
in Baltimore City as bookkeeper for several years, filled out
and delivered to William N. Spear, of Baltimore City, who
was the agent and employee of the Standard Oil Company in
Baltimore City, and who had charge of the annuities, bene-
fits and insurance department of that company, an applica-
tion for insurance under the group policy issued to that com-
pany by the said Assurance Society. Mr. Daly had for a

year or more been engaged to Miss Helen C. McKenzie, of Baltimore City, and when he applied to Mr. Spear, whom he had known for a number of years and who knew of his engagement to Miss McKenzie, for the insurance, he asked Mr. Spear if he could not name Miss McKenzie as the beneficiary of his insurance, and Mr. Spear told him that under "the schedule printed under the application" it would not be possible, the company would not permit it, "because the insurance was intended for the employee's dependents," and a fiancee could not be considered a dependent, but after his marriage he could make the change, and that in the meantime he could name either his mother or father, who according to the schedule were the preferred beneficiaries under the company's plan of insurance. Mr. Daly accordingly named his father, Patrick Daly, of Wilmington, Delaware, as the beneficiary, and the following policy or certificate of insurance was issued by the Assurance Society and delivered to him by Mr. Spear:

"The Equitable Life Assurance Society of the United States.

"No. 5342425—Insurance Amount for $1,140.00.

"Hereby certifies that the Standard Oil Company (New Jersey) (hereinafter called the Employer) has contracted to insure the life of Charles A. Daly with The Equitable Life Assurance Society of the United States for the amount set forth in the Insurance Register kept by the society in connection with this group and ascertained in accordance with the Standard Oil Company's life insurance plan stated on the second page hereof. The insurance is to be payable if death occurs while in the employment of said employer and during the continuance of the policy and subject to the terms and conditions thereof, as follows: $150 for funeral expenses and the remainder in twelve equal monthly payments to the beneficiary entitled thereunder to receive the same. * * *

"Beneficiary—Patrick, father.

"Subject to the right of the employee, with the consent of the Employer, to change the beneficiary to any

of the preference beneficiaries designated in the Standard Oil Company's life insurance plan stated on the second page hereof and in accordance therewith, which change will be effective upon entry in said insurance register. If the beneficiary named as above does not survive the employee, the amount of the insurance will be payable to the first named beneficiary or class of beneficiaries designated in the Standard Oil Company's life insurance plan stated on second page hereof, who shall survive all prior classes of designated beneficiaries.

"No assignment of said insurance shall be valid.

"This individual certificate is furnished in accordance with the terms of the Equitable Group Insurance Policy issued and delivered to said Employer, which policy with the Employer's application therefor and the insurance register therein referred to constitute the entire contract between the parties.

                                "W. A. Day, President.
"New York, April 15th, 1918."


The plan of insurance referred to in the above certificate as printed on the second page thereof contains the following provision in regard to beneficiaries:

        "Schedule of Successive Classes of Preference
                    Beneficiaries.

"Beneficiaries are to be designated in accordance with the following schedule:

"The Employee's: 1. Widow or widower. 2. Children in payments to be made to surviving parents and adult children as trustees for the equal benefit of the employee's children. Should any child have died before the employee, his or her share shall be payable in equal parts to such child's children then living. 3. Parents of the survivor of them. 4. Other blood relations, conceded by the Employer as being dependent upon the employee to at least 20% of his or her wages.

"The employee may, with the written consent of the Employer, designate a beneficiary outside of the above four classes, in which event the amount of insurance

shall be $500. The Employer's consent will not be given in any case where a person included in the first four classes above is dependent upon the employee to the extent of 20% of his or her wages."

There was also printed on the certificate the following statement of the Standard Oil Company:

"Standard Oil Company,
"(Incorporated in New Jersey)
"New York.
"Office of the President,
"New York, April 15th, 1918.
"To Employee named in attached certificate:

"This certificate of life insurance is issued at the expense of the Standard Oil Company (New Jersey) in accordance with the provisions of its annuities and benefits plan.

"Provision is made for the payment of a special sum in case of death from either sickness or accident, and payment on account of death by accident is independent of and supplemental to payment that may be made under the State Compensation Law.

"Each employee is entitled to a copy of the pamphlet containing the annuities and benefits plan in detail, showing the provisions that have been made by the company for helping its employees and their dependents meet the financial contingencies that arise in times of sickness, accident, old age and death.

"With hearty appreciation of your loyal co-operation,
"On behalf of the Board of Directors,
"Walter C. Tingh, President."
"Approved: A. C. Bedford, Chairman."

It appears from the evidence that Miss McKenzie had a policy of insurance on her life, and that she and Mr. Daly had agreed that she should make him the beneficiary in her policy, and that he should make her the beneficiary in his; that she had her policy written accordingly, and that when

Mr. Daly got his certificate he gave it to her to keep and told her the reason his father was named as beneficiary was because he was not then contributing to her support, but that as soon as they were married he would have it changed. They were married on the 3rd of September, 1918, and about a week later, as soon as they returned from their wedding trip, he went to see Mr. Spear and asked him to make the change in his certificate by making his wife the beneficiary. Mr. Spear testified that he could not make the change at that time because he had not received the blanks for changing beneficiaries from the New York office; that the company's plan of insurance was practically new at that time and he had not received all the blanks, and that he told Mr. Daly that as soon as the blanks were received from the New York office he would give him one to fill out and sign; that the blanks were received sometime later, he could not tell just when, and that not having made a note of Mr. Daly's request, he overlooked it, forgot it, and did not give him a blank; that he, witness, was very busy at that time and was working day and night trying to get all the employees insured before the first of the year, and was also busy helping to make out war questionnaires, and that that was the reason he overlooked Mr. Daly's request; that Mr. Daly was entitled to have the beneficiary changed because his status had changed; that the company requires an employee to change his beneficiary after he marries because under its plan of insurance the wife comes before the parents; that according to the usual course of procedure, if the employee makes the request for the change he, witness, fills out the blank, which is signed by the employee and by him, and forwarded to the New York office, and the New York office forwards one copy of it to the Assurance Society and retains the other; that if the employee does not make the request for the change, and the company finds out he is married, the company requires him to make the application in the manner stated, because according to its schedule the wife comes before other authorized beneficiaries; that the applications for change of beneficiary are put through ac-

cording to the blanks signed by the employee and by him.
Shortly after he applied to Mr. Spear to make the change in
his certificate, Mr. Daly was taken sick on the 5th of Octo-
ber, 1918, with the "flu" and double pneumonia, and he died
on the 16th of that month without having received the blank
from Mr. Spear. After his death the Assurance Society, in
accordance with the terms of the certificate, paid to Mrs.
Daly $150 for funeral expenses, but as she and Patrick Daly,
the father of the insured, both claimed and demanded the
balance due under the certificate, the society filed in the Cir-
cuit Court of Baltimore City a bill of interpleader against
them, and the court passed a decree requiring them to inter-
plead, and the Assurance Society to pay into court to the
credit of the cause the balance of said fund, amounting to
$990, less a fee of $50 to its counsel. After a hearing upon
the pleadings and evidence adduced by the parties, the court
below passed a decree directing the clerk of the court to pay
said sum of $990, less the fee of $50 referred to, and the
cost of the proceedings, to Patrick Daly, the father of the
deceased, and from that decree Mrs. Daly has brought this
appeal.

Where the certificate or policy of insurance issued to the
insured expressly reserves to him the right to change the
beneficiary named therein, whatever interest the beneficiary
has in the certificate or policy is subject to that right of the
insured, and where the contract of insurance, or, in case of
benefit societies, the policy, constitution or by-laws of the
association prescribe the manner in which the change of bene-
ficiary shall be made, such requirements must be followed by
the insured in order to effect the change desired. These prin-
ciples are generally recognized and are in accordance with
the decisions in this State. 14 *R. C. L.,* sec. 545, p. 1376
and sec. 555, p. 1390; *Supreme Conclave, Royal Adelphia*
v. *Cappella,* 41 Fed. Rep. 1; *Berkeley* v. *Harper,* 3 App. D.
C. 308; *Thomas* v. *Cochran,* 89 Md. 390; *Dale* v. *Brumbly,*
96 Md. 674; *Fitzgerald* v. *Balto. L. Ins. Co.,* 133 Md. 619.

It is said, however, in *Supreme Conclave, Royal Adelphia* v. *Capella, supra,* which is regarded as a leading case on the subject, that there are three exceptions to the general rule requiring exact compliance with the regulations in regard to the manner in which a change of beneficiary shall be made: "First—If the society has waived a strict compliance with its own rules, and, in pursuance of a request of the insured to change his beneficiary, has issued a new certificate to him, the original beneficiary will not be heard to complain that the course indicated by the regulations was not pursued. Second—If it be beyond the power of the insured to comply literally with the regulations, a court of equity will treat the change as having been legally made. Third—If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but, before the new certificate is actually issued, he dies, a court of equity will decree that to be done which ought to be done, and act as though the certificate had been issued."

In the case referred to there was a bill of interpleader, and after stating these exceptions to the general rule, the court said: "We think the case under consideration falls within these exceptions. Five days before the death of the insured, he signed and acknowledged before a notary a written application for a change in his certificate in the form prescribed by the by-laws, stating that the original certificate to Anna Cappella was in her possession, and beyond his control. This application was delivered to the secretary of the Chapter Conclave at Milwaukee, who affixed the seal of the conclave, and forwarded it to the supreme secretary. It is true, he did not surrender the original certificate, as required by the regulations; but he had done all in this connection which was within his power, or which he could reasonably be required to do. * * * Were the non-surrender of the certificate set up by the company in a common-law action brought by Kratzsch, it is possible the court might be compelled to hold that he had failed to establish his title; but when the company waives this defense, or at least disclaims any interest in the result

of the controversy, the objection comes with ill grace from one who is solely responsible for such non-surrender." In the case of *Berkeley* v. *Harper, supra,* which also arose on a bill of interpleader, and where the application for change of beneficiary was made out by the insured, who died before the papers could be transmitted to and acted on at the principal or home office of the order, in the opinion delivered by Mr. Chief Justice Alvey, the Court of Appeals of the District of Columbia said: "Upon the evidence in this case no doubt can exist as to the intention of Wood, the member. He intended to change the beneficiary in the certificate of membership, and he did all in his power to accomplish that purpose. He did not live long enough to have all the forms prescribed actually complied with; but the particulars in which the defect existed were purely of a formal nature, and such as the order could and did properly dispense with. The revocation and new appointment were substantially made; and it was the right of the member to have the substituted certificate issued as he directed, and though death interposed before all the forms could be complied with, the right of substitution of beneficiary previously exercised was not lost." After repeating the exceptions to the general rule which we have quoted from *Supreme Conclave, Royal Adelphia* v. *Cappella, supra,* the court, referring to that case, said further: "In the course of the opinion of the court in that case, the learned justice refers to the case of *Association* v. *Kirgin,* 28 Mo. App. 80, where 'the insured having met with a fatal accident, called a friend and requested him to take his certificate to the association and surrender it, paying a fee of fifty cents, and request them to issue a new one payable to his wife. This was done, and a minute of the transaction was made on the records of the association for that day. On the following day the insured died. It was held that in doing this, he had done all that the laws of the order required to be done on his part in order to have a new certificate issued; that his right to make the change was absolute; and that the association had no right to refuse his request; and, further,

that the fact that the certificate was issued after his death was immaterial, since the certificate was not the right itself, but merely the evidence of the right.' To the same effect are the cases of *Kepler* v. *Supreme Lodge, Knights of Honor,* 45 Hun. 274, and *Scott* v. *Relief Assn.,* 63 N. H. 566. These authorities would seem to be founded upon principle, and we entirely concur in the propositions maintained by them." In *Jory* v. *Supreme Council American Legion of Honor,* 105 Cal. 20, 26 L. R. A. 733, the original certificate was in possession of the beneficiary named therein, who refused to give it up, and the insured was unable to surrender it as required by the by-laws, and the court held that as the money had been paid into court, and the society was not resisting payment to the new beneficiary, and as the insured had done all he could do to effect the change, the new beneficiary was entitled to the fund. In the case of *Marsh* v. *Supreme Council, etc.,* 149 Mass. 512, where the certificate was not delivered, as required by the laws of the corporation, to the supreme secretary, by reason of the fraud and collusion of the original beneficary and a subordinate secretary, the court held that, the insured having done all he could do to effect a change of beneficiary, the new beneficiary was entitled to the fund and said: "The controversy is solely between these two claimants. It is a matter in which the corporation had no interest. It desires only that a decree may be rendered that shall conclude these claimants as to any demands upon it." In the case of *Luhrs* v. *Luhrs,* 123 N. Y. 367, notwithstanding the new certificate was not in fact issued until after the death of the member of the order, the court held that the new beneficiary was entitled to the fund. In the case of *Lahey* v. *Lahey,* 174 N. Y. 146, the association failed and neglected to issue a new certificate on the ground that it had no power to issue a new certificate while the original was outstanding, notwithstanding it had been advised that the original certificate was in the possession of the beneficiary named therein, who refused to surrender it. The court held that the case was not one in which the benefit association was interested,

but one only between the claimants, and, notwithstanding the statute of New York authorized a change of the beneficiary in the certificate of such a society, with "the consent of the society," and notwithstanding the by-laws of the society required the application for a change of beneficiary to be made by filling out the blank on the back of the original certificate, the court held that the new beneficiary named in a written application to the society to change the beneficiary was entitled to the fund. In that case the court refers with approval to the case of *Nally* v. *Nally*, 74 Ga. 669, 58 Am. Rep. 458, in reference to which it said: "In *Nally* v. *Nally*, * * * an unmarried man took out a policy of insurance on his life, one condition of which was that the policy was issued and accepted upon the express condition that the assured might, with the consent of the company, at any time, assign it, or, before assignment, change the beneficiaries, or make any other change. The person named as the beneficiary was the sister of the assured, and to her he delivered the policy. He subsequently married. * * * The sister had the policy and would not give it up. The agent was uncertain whether a change could be made without the policy, but promised to notify the company, and have the change made if possible. The officers agreed to attend to the matter, but overlooked it. After the death of the assured, the company filed a bill to require the wife and sister to interplead, and have the question determined as to who was entitled to the money. It was held that the gift to the sister was not perfected, so as to be absolute and irrevocable, and the assured had the right to change the beneficiary of the policy, and whether such change was to be effected by parol or in writing was a matter entirely between the assured and the company." A number of cases to the same effect as those to which we have referred are collected in a note to 34 *L. R. A.* (*N. S.*) 277, and among them is the case of *John Hancock Mut. L. Ins. Co.* v. *White*, 20 R. I. 457, 5, in which, the note says, "the proceeds of a policy of life insurance in which the assured reserved the right to change the beneficiary with the consent of the company were

decreed to one whom the assured had designated by an appropriate paper forwarded to the company's office, although, owing to the neglect of the company, no attention had been given to the paper, and no change ever recorded in its books." The same principle is recognized in 14 *R. C. L.,* sec. 556, p. 1392, where it is said: "While it is true as a general rule, as stated in the preceding paragraph, that a change in beneficiaries cannot be made except by a substantial compliance with the regulations of the society, yet courts of equity recognize exceptions to this general principle. Equity does not demand impossible things, and will consider as done that which should have been done, and, when a member has complied with all of the requirements of the rules for the purpose of making a substitution of beneficiaries within his power, he has done all that a court of equity demands."

In the case at bar the insurance we are considering is what is termed industrial insurance. It is paid for by the employer, and the beneficiaries are not only limited to specified classes, but the insured or employee is required to select the beneficiary in accordance with a preference schedule prescribed by the employer. The insured is not only expressly authorized by the certificate or policy issued to him, and by the policy issued by the society to his employer, to change the beneficiary, but according to the plan of insurance adopted by his employer, and which is referred to in the contract between the employer and the assurance society, where his status is changed by marriage, he is required to change the beneficiary by naming his wife as the person to receive the benefits of his policy. In pursuance of the right expressly reserved to him in his certificate, and in accordance with the plan of insurance adopted by his employer, Mr. Daly, the insured, applied to Mr. Spear, the agent of the employer, who had charge of the insurance department of the employer, to make the change in his certificate by making his wife the beneficiary, and the only reason it was not done at once was because Mr. Spear did not have the blanks which were to be furnished him for that purpose. He promised the insured

to give him a blank as soon as he got them, but this he neg-
lected or failed to do because he overlooked it.   There can be
no doubt of the insured's desire and intention to change the
beneficiary or that he did all in his power to effect the change,
and the only reason a more formal application was not made,
and noted on the insurance register of the society, was be-
cause the society or the employer had failed to furnish its or
their agent the blanks used for that purpose, or because its
or their agent failed to give him a blank in accordance with
his promise to do so.   Under such circumstances the claim
of Patrick Daly, whose interest in the policy was subject to
the right of the insured to change the beneficiary, should not
be allowed to prevail over that of his widow, for whom the
insured clearly intended the fruits of his policy, and to whom
it should be awarded by a court of equity upon the principle
we have stated.

It is urged on the part of the appellee that, as the policy
provided that the change of beneficiary should be effective
upon the entry of the same upon the insurance register of
the society, and as the statute of New York required the as-
sent of the society to such a change, no change of beneficiary
could be accomplished without such entry and assent. ˙ But
in this case the suit is between the claimants, and the society
has declared its willingness to pay the fund to the one the
court decides is entitled to it.   Neither the society nor the
employer is resisting the claim of the widow, and under the
plan of insurance adopted by the latter and recognized by the
society the insured was required to make the change in favor
of his wife.   The statute referred to by the appellee, if
offered in evidence, is not found in the record, although set
out in the appellee's brief.   But assuming that it is before
us, in the case of *Lahey* v. *Lahey, supra,* the Court of Ap-
peals of New York quoted that or a similar statute of New
York, and the case being between the claimants of the fund,
the court held that notwithstanding the society had refused
to issue a new certificate, the attempted change of beneficiary

was effective, and that the new benefiiciary was entitled to the fund.

Where the insurance society is resisting the claim of a proposed beneficiary, or is a party to the suit, a different rule has been held to apply (*Abbott* v. *Supreme Colony, etc.,* 190 Mass. 67), and in the case of *Freund* v. *Freund,* 218 Ill. 189, the court refused to adopt the equitable doctrine to which we have referred, but we think it is amply supported by authority, and that it is the one that should be applied to the facts of his case.

> *Decree reversed with costs to the appellant, and cause remanded in order that a decree may be passed in accordance with the foregoing opinion.*