# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed January 23, 1926.

EUREKA-MARYLAND ASSURANCE CORPORATION, A BODY CORPORATE,

VS.

ANNA K. WRIGHT AND JENNIE K. GREENFIELD, EXECUTRICES OF THE ESTATE OF ROBERT J. KEARNEY, DECEASED, AND CARROLL H. REVER, ADMINISTRATOR OF JAMES KEARNEY, DECEASED.

*Jacob S. New* and *Julius H. Wyman* for Eureka-Maryland Assurance Corporation.

*E. Paul Mason* and *Robert J. MacGregor* for Anna K. Wright and Jennie K. Greenfield, executrices, etc.

*A. Bernard Chancellor* for Carroll H. Rever, administrator, etc.

STANTON, J.—

This case involves the disposition of the proceeds of a life insurance policy and arises out of the following facts.

Robert J. Kearney and James Kearney were brothers, who became associated in the book bindery business in 1917. Robert J. Kearney provided the capital and James Kearney was the practical man. Robert was unmarried, while James was married and had a wife and seven children, most of whom were grown at the time he entered into business with his brother. On July 1st, 1919, James Kearney applied for life insurance in the amount of $10,000 in the Maryland Assurance Corporation. The application provided that the right to change the beneficiary is not reserved. The policy was issued on this application, dated the 8th day of July, 1919, in which Robert J. Kearney was made beneficiary, and the policy contains a clause that the insured should have the right to change the beneficiary. The policy further provided that in the event the beneficiary should predecease the assured, then the proceeds of the policy shall be paid to the estate of the assured.

On February 13th, 1920, James Kearney took out a policy of $2,000, payable to his wife, and on February 27th, 1920, another policy for $3,000, payable to his wife, both of these policies with the National Life Insurance Company of Vermont. Then, on September 25th, 1920, he took out additional insurance with the Mutual of New York, one policy for $15,000, payable to his estate, which policy he assigned to Robert J. Kearney on October 25th, 1920; and another policy for $5,000 on September 25th, 1920, payable to his estate, in which he changed the beneficiary on March 12th, 1925. Then, on October 2nd, 1920, James Kearney took out another policy with the Mutual of New York for $5,000, payable to his estate, in which he changed the beneficiary on March 12th, 1925. Again on October 6th, 1921, James Kearney took out a policy for $10,000 with the Mutual of New York and assigned this policy to Robert J. Kearney on October 13th, 1921; and on January 26th, 1922, Robert J. Kearney

and James Kearney executed an assignment of this policy to the Hamilton Bank.

In December of 1921, James Kearney was overcome by gas while in his place of business, and this occurrence incapacitated him from further attention to the business. He gradually lost his health, and because of his permanent disability he was relieved of the payment of premiums on the Maryland Assurance Corporation policy beginning with the premiums due July 8th, 1923. The checks of the book bindery business were used to pay the premiums which were paid on this policy.

Robert J. Kearney died on or about December 18th, 1922, leaving a last will and testament, which was probated and his executrices qualified; while James Kearney did not die until March 17th, 1925, and an administrator of his estate has been appointed and has qualified. James Kearney never changed the beneficiary in the policy now before the Court, after the death of his brother Robert. The conflict between the application and the terms of the policy, about the change of beneficiary, was brought to the attention of both James Kearney and his brother Robert at or about the time of the delivery of the policy by the agent who wrote the insurance, but no action was taken looking to changing the policy to make it conform to the application, so far as the Insurance Company is concerned. The executrices of Robert J. Kearney claim that in order to correct the conflict between the application and the policy, James Kearney executed and delivered an assignment of all his right, title and interest in and to said policy at or about the time of its delivery, and that this assignment was turned over to the Insurance Company at the time the policy was surrendered for payment, after the death of James Kearney. The Insurance Company says no such assignment was ever delivered, nor was it ever presented to the Insurance Company to be recorded on the books of the Company, as required by the terms of the policy; and as was done with other assignments of the same policy. The administrator of James Kearney claims there never was an assignment of the policy by James to Robert; and the case turns on this question of fact.

It is unusual for a man with a wife and seven children to take out insurance for $10,000 and make his brother beneficiary. But when the insurance was applied for and the policy issued, they were both sufficiently experienced in business to know the effect of the language of the policy. In addition to that, Mr. Gilliam, the agent who wrote the insurance, testified that he had called the attention of both Robert and James to the discrepancy between the application and the policy, as to the right to change the beneficiary. The matter was allowed to rest in the form in which it was issued. In January, 1920, Robert J. Kearney made an assignment of the policy to the Hamilton Bank. This assignment was offered in evidence and discloses that two other policies on the life of Robert were pledged at the same time. It has been suggested by the solicitors for the executrices in the argument, that the bank officials would not have taken the policy as collateral with only a contingent interest in Robert. But that does not necessarily follow because he pledged two other policies and the taking of the assignment may have been only a matter of form to gratify banking requirements for single name paper. At that time Robert Kearney was a man of substantial worth in both real and personal property. He was the owner of the book bindery business and interested with Mr. Wright in the brush business, as well as being a director in the Hamilton Bank. It may have been this fact which suggested the propriety of collateral, if he was to be a borrower from the bank of which he was also a director.

Mr. Gilliam testified that shortly after the policy was delivered James Kearney told him he was going to assign the policy to Robert, and that some time in January of 1920, James Kearney told him that he had assigned the policy. He fixed this interview as occurring in the new building at South and Water street. No witness who undertakes to testify as to the time of removal from the old to the new building names an earlier date than June or July of 1920, while Mr. Rever, who was employed in the business, says they did not move until October of 1920. If the conversation occurred in the new building, it is the latter date that is significant because in October of 1920, James Kearney had obtained a substantial amount of insurance in the Mutual of New York, which had been assigned to Robert, and

it may have well been this assignment to which he was referring when he talked to Mr. Gilliam. Mr. Gilliam had been in contact with James Kearney more or less frequently, according to his evidence, and had made effort to get insurance on the life of Robert because Robert Kearney had been refused insurance at the time the policy was issued to James in July of 1919, but of the $40,000 worth of insurance which James Kearney bought on his own life after the policy in July, 1919 Mr. Gilliam did not place a dollar's worth, and if he was soliciting any of it, a great deal of the conversation could have occurred which had reference to policies other than the one in the Maryland Assurance Corporation.

Additional machinery was purchased when the business was moved in the summer or fall of 1920, and that fact probably occasioned the insurance which was obtained at the time and the stirring up of the collateral held by the Hamilton Bank. On November 9th, 1921, the Hamilton Bank wrote a letter and brought to the attention of the Maryland Assurance Corporation the fact that the bank held the Policy No. 736 as collateral, and for the first time inquired whether the assignment of January, 1920, was in proper form to meet the requirements of the Company. This letter from the Hamilton Bank did not say that Robert was assignee of the policy, but speaks of him as being beneficiary, and it would be only reasonable inference to suppose that with the higher relation of assignee, which would make him sole owner, the bank officials would have so designated him, or at least have said that he was both beneficiary and assignee, if any such condition existed. Mr. Berger, the cashier, was not only an experienced bank official, but is and was at that time a graduate of law, who in either or both capacities would appreciate the importance of the right of the respective relations, as beneficiary and assignee under this policy.

The Insurance Company replied to this letter, and enclosed two forms of assignment to be executed, which was done at the instance of the bank officials. One copy was retained by the bank, while the other was sent to the Insurance Company, as required by the terms of the policy. Mr. Gilliam also said that he had notified both Robert and James Kearney that in order to make any assignment effective with the Company, the assignment must be executed in duplicate, and one copy delivered to the Company. In the face of this notice at the time of the delivery of the policy, as well as the printed notice on the blank form furnished by the Insurance Company at the time of the assignment to the Hamilton Bank, which was executed by both James and Robert Kearney in November, 1921, there has never been any notice to or record of the alleged assignment of this Policy No. 736, from James Kearney to his brother Robert, so far as the Insurance Company is concerned. James Kearney wrote a letter in December, 1921, in which he said he had turned over to Robert, insurance aggregating $35,000. Just about a month before this date he had joined in an assignment with Robert to the Hamilton Bank of the policy now in controversy, and might well have regarded as having parted with his interest in this policy, although it was only as collateral to the bank.

The inquiry in this case, however, is whether there ever was an actual assignment of this policy from James to Robert. The assignment made in January of 1920 from Robert to the Hamilton Bank has been retained and produced in evidence, but no one at the bank has ever seen the alleged assignment from James to Robert. Mrs. Anna K. Wright, one of the executrices of Robert, testified that such an assignment was delivered to her by the bank at the time she paid off the indebtedness in April of 1924, and the policy was returned to her. She describes the assignment as being written on a little piece of yellow paper, indicating the size to be about six inches wide and about two or three inches long. At the very close of the case, and because the taking of testimony was held open to await the return of Mr. Berger from Florida, the assignment of January, 1920, from Robert to the bank, is produced, and answers Mrs. Wright's description of the size of the assignment, but not the color. She testified that she retained the assignment on the yellow paper until she delivered it to her husband, who in turn testifies that he delivered it to the officials of the Insurance Company, but the husband says it was on a piece of white paper.

There are four people who say they have seen the assignment. Mrs. Greenfield, a sister of Robert J. Kearney and one of the executrices, is so hesitating

and vague in her testimony, that she clearly indicates little or no contact with the actual affairs of the estate, leaving the matter to the direction of Mrs. Wright, her co-executrix. Mrs. Wright has been so active in the settlement of the book bindery business and other affairs of the estate, that she went to the Kearney Building and directed the liquidation of the business. She is a woman of intelligence, force and keen perception, and must have had the confidence of James Kearney, as shown by the letter of December 11th, 1921, and his sending for her during his last illness. She should know yellow paper from white paper. The testimony of Mr. George Wright is so overly cautious that to read the record will give no effective picture of how he repeated or used the expression in speaking of this assignment, that to the best of his knowledge and belief he had seen it, and had delivered it to the Insurance Company. Mr. Wright was associated in business with Robert J. Kearney.

Mr. Robert MacGregor, the personal counsel for Robert J. Kearney, is the only other witness who says he saw the assignment from James to Robert, and that was in June of 1924. At that time Robert J. Kearney was dead and James was seriously ill. Mr. MacGregor had been in communication with the Actuary of the Maryland Assurance Corporation in the summer of 1922 about the waiver of the payment of future premiums, but in the summer of 1924, after the policy was returned by the Hamilton Bank, Mr. MacGregor went to the agents of the Insurance Company to obtain some information about the reassignment from the Hamilton Bank. On that assignment, as well as in the policy, there appeared a notice that no assignment would be binding on the Company unless entered on the books of the Company, and yet no action was taken by Mr. MacGregor to bring to the attention of the Insurance Company this alleged assignment from James to Robert, nor did he make any record by letter or otherwise that any such paper was in existence. It is conceded that no one of these four witnesses had anything to do with the preparation or execution of the assignment from James to Robert, and all the knowledge they profess to have begins with the delivery of the policy in April of 1924, when it was said to have been attached to the policy at the time it was delivered to Mrs. Wright by the Hamilton Bank.

It was at this time that Mrs. Wright received the assignment from Robert to the Bank, which was executed in January, 1920, and if the alleged assignment from James to Robert was attached to the policy, is it not more than likely the bank officials would have known of the existence of such a paper? The counsel for the executrices said that they did not know of the existence of the assignment made by Robert in January of 1920, until Mr. Berger called it to their attention on his return from Florida, and when he was to take the stand to testify in this case. The testimony discloses further that it is not the custom to call in policies at the time of the execution or recording of an assignment, although so far as the Maryland Assurance Corporation is concerned their officials would never enter a later assignment without the prior one being reassigned or released. Both the assignment to the Hamilton Bank, and the reassignment or release by the bank were done by the bank officials writing to the Company, obtaining the necessary blanks and having them executed at the bank, and the only time the policy was in the possession of the Insurance Company after it was issued was on October 2nd, 1923. At that time Mrs. Wright says she substituted other collateral in order to obtain the policy from the bank to have endorsed on it the waiver of the payment of future premiums. But if any assignment from James to Robert was attached to the policy, is it not reasonable to suppose that she would have seen it at that time? The correspondence shows she mailed the policy to the Insurance Company with a letter dated September 24th, 1923. She does not testify that she saw the assignment at that time, nor do the bank officials, nor did any one connected with the Insurance Company. At this date, namely, October 2nd, 1923, the assignment of November 17th, 1921, was the only one on the records of the Insurance Company.

In addition to the possession of the policy by Mrs. Wright in September of 1923, the Insurance Company wrote to Mrs. Wright under date of June 19th, 1923, that they were advised of the death of Robert J. Kearney, and that the assignment to the Hamilton Bank is outstanding, and that there had been no change of the beneficiary since the death of Robert Kearney. Why then, with the policy in her possession three

months later, did she not call the matter to the attention of the Insurance Company, especially as she could see the provisions in the policy requiring assignments to be noted on the records of the Company? In addition to all these other facts, Robert J. Kearney wrote to the Insurance Company on June 13th, 1922, in which letter he refers to his brother being overcome by gas in December, 1921, and speaks of the policy No. 736, and refers to himself as being beneficiary. But at no time does he say it was assigned to him. This letter shows he was familiar with the requirements of the policy in obtaining the waiver of premiums, and the correspondence shows that between June 13th, 1922, and July 8th, 1922, Robert J. Kearney had one or more interviews with the Actuary of the Company about having the premiums waived, but nothing appears to have been said about owning the policy as assignee. Both Mr. and Mrs. Wright say that the assignment from James to Robert was attached to the policy at the time it was left with the Insurance Company for payment, and assume that it must have been lost since that time, but there was a much smaller paper sent to Mrs. Wright after the Eureka Insurance Company took over the Maryland Assurance Corporation about May 6th, 1924, and it is attached to the policy—the assumption rider—and it was not lost or mislaid.

It also appears that several of the children of James Kearney testified that Mrs. Wright claimed in an interview at their home since this controversy has arisen, that their father had obtained the assignment while it was at the Hamilton Bank and destroyed it.

Mr. MacGregor testified that the assignment which he claims to have seen was on a piece of white paper with printed matter on it, much after the size, style and appearance of the form which the Insurance Company sent to the Hamilton Bank. A comparison of the testimony of all four witnesses who claim to have seen the assignment discloses such a diversity of opinion as to size, color of paper and its contents as to leave the matter in absolute confusion. The probable explanation is that in surrendering the policies on the life of James Kearney for payment, there were so many assignments and other papers attached to them, made necessary by the designation of the plan of payment, and all of the papers

so similar in general form and appearance, that the witnesses probably have some one or more of these papers in mind when they undertake to apply their recollections to the policy of the Maryland Assurance Corporation. Mrs. Wright handled the transactions with the Mutual of New York as late as March 12th, 1925, which was five days before the death of James Kearney.

In this case, the decisions in Daly vs. Daly, 138 Md. 155; and the Reliance Life Insurance Company vs. Pennington, 142 Md. 390, have no application. The plaintiffs have failed to establish by clear and convincing proof that an assignment of the policy No. 736 in the Maryland Assurance Corporation from James to Robert was ever made and executed, and as no change was made in the beneficiary after the death of Robert, the terms of the policy must control and be given effect, and the proceeds will be directed to be paid to the estate of James Kearney. A decree will be signed accordingly, the estate of Robert J. Kearney to pay the costs.