## ÆTNA LIFE INS. CO. v. HARTLEY et al.

### No. 2166.

District Court, D. Maryland.
Sept. 25, 1933.

R. Bayly Chapman, of Baltimore, Md., for Mrs. Lucy A. Hartley.

J. Kemp Bartlett, Jr. (of Bartlett, Poe & Claggett), of Baltimore, Md., for Loretta Wilson Hartley.

Semmes, Bowen & Semmes, of Baltimore, Md., for petitioner Ætna Life Ins. Co.

CHESNUT, District Judge.

This is an interpleader case in equity in which Mrs. Loretta Wilson Hartley is claiming the whole of the proceeds of a ten thousand dollar ($10,000) life insurance policy issued by the Ætna Life Insurance Company, and Mrs. Lucy A. Hartley is claiming five thousand dollars ($5,000) of said amount. The whole fund of $10,000 has been heretofore paid into the court and under a prior order (not contested) the sum of $5,000, less certain expenses, has heretofore been paid to Mrs. Loretta W. Hartley, leaving the amount in dispute $5,000.

The facts established by the testimony are as follows. The insurance policy is represented by a certificate under a general group insurance policy executed by the Ætna Life Insurance Company (an ordinary and regular life insurance company as distinct from a fraternal or beneficial insurance company) to the United States Fidelity and Guaranty Company, a Maryland corporation, on behalf of certain employés, including the insured, John W. Hartley, who was in its employ for many years prior to his death on January 31, 1933. This policy or particular certificate thereunder, when originally issued was made payable to the estate of the insured but on October 23, 1926, the beneficiary was changed to the name of Loretta Wilson Hartley (also described as "wife") and the policy or certificate so continued until the death of the insured.

It further appeared from the testimony that J. W. Hartley was lawfully married in 1888 to Lucy A. Hartley but separated from her in 1906, she continuing to live in Philadelphia and he going to New York City at that time. He contributed to her support somewhat irregularly thereafter until 1932. There were two children, Fred K. Hartley and Arthur C. Hartley, both now of mature age. About 1908 the husband was residing in Ohio and some time thereafter exhibited to the son, Fred K. Hartley, a paper purporting to be a divorce decree obtained by him based on constructive notice by publication in the Court of Common Pleas of Franklin County, Ohio. The son, testifying as a witness, said that he told his father the paper was of no force and effect, basing this comment on the appearance of the paper, the absence of a signature and seal and the further fact that his mother, the wife, had received no notice whatever of it. The father did not further press the alleged validity of the divorce. No record of the alleged divorce can be found in the Ohio court.

On September 27, 1926, J. W. Hartley and Loretta Wilson Hartley (then recently divorced from her former husband) were formally married by a civil ceremony conducted by the clerk of the court in New York City. At that time Mrs. Loretta Wilson Hartley presented her divorce decree which has not been questioned, and J. W. Hartley presented the so-called divorce entry decree above mentioned. Publicity through the press was given to this marriage ceremony, and thereafter and until his death J. W. Hartley and Loretta Wilson Hartley lived together as man and wife in Baltimore City openly and notoriously. Certain other insurance policies carried by J. W. Hartley were, shortly after his second marriage, made payable to Loretta Wilson Hartley although they seem to have lapsed prior to his death. He left no estate and there has been no administration.

His two sons from time to time made efforts to have their father more adequately provide for the support of their mother. When they learned of their father's second marriage they expressed their disapproval and renewed their efforts to have adequate provision made for their mother's support. Arthur Hartley conferred with his father upon the subject and as a result the written agreement of March 11, 1927, was prepared at the instance of Arthur Hartley and signed by the father and mother under date of March 11, 1927. A copy of the agreement is filed with the answer of Lucy A. Hartley to the bill of complaint. In substance it acknowledged the continued status of husband and wife and contained the promise of J. W. Hartley to pay $100 a month to the wife for her support and to carry a life insurance policy for her benefit in the amount of $5,000. Payments in accordance therewith were made for some time by him but later were reduced in amount, first to $70 a month and later to $10 or $20 a month, the husband's income having been much reduced in later years. Also

pursuant to the agreement, John W. Hartley sent to Lucy A. Hartley a life insurance policy of the Massachusetts Life Insurance Company in the amount of $5,000, in which Lucy A. Hartley was designated as beneficiary, and paid the premiums thereon until 1931. By letter dated February 28, 1931, to Lucy A. Hartley, he requested that the policy be returned to him because, as he said, he was no longer able to pay the annual premiums, and that in lieu thereof he would obtain a new paid-up life insurance policy for $5,000 or more and send it to her. The offer on its face to one familiar with life insurance policies might have aroused some suspicion as to the sincerity of the new promise but pursuant to the request, this particular policy was in fact returned to J. W. Hartley and he thereupon proceeded to surrender it to the Company and obtain therefor its cash surrender value. He never performed his promise to substitute a paid-up policy or any other kind of policy for that of the Massachusetts Life Insurance Company so surrendered, although frequently requested to do so.

After his death Mrs. Loretta Wilson Hartley found the certificate issued under the group policy of the Ætna in his safe deposit box and made demand upon the Company for its payment. Fred K. Hartley, acting for his mother and learning of the existence of the group certificate or policy after his father's death, also made demand upon the Insurance Company for the payment of $5,000 thereof to his mother. This caused the interpleader bill to be filed. Under the terms and conditions of the group policy and certificate, J. W. Hartley had reserved the power to change the beneficiary from time to time.

The basis of the contention of Lucy A. Hartley as set up in her answer filed in the case, is that by virtue of the agreement of March 11, 1927, the policy in suit was impressed with a trust in her favor to the extent of $5,000. Her answer does not mention the Massachusetts Life Insurance Company policy above referred to. In my opinion there is no evidence in the case which would justify the finding that the policy in suit was impressed with a trust in favor of Lucy A. Hartley. This policy had been issued prior to the making of the agreement and had been made payable to Loretta Wilson Hartley on October 23, 1926, also prior thereto. Neither Mrs. Lucy A. Hartley nor her sons acting for her, knew of the existence in fact of the particular policy in favor of their father although one of the sons had heard that the United States Fidelity and Guaranty Company carried group insurance for its employés. The particular policy was evidently not in contemplation of either of the parties to the agreement. On the contrary, a policy in another company for $5,000 as above stated was delivered to Mrs. Lucy A. Hartley and subsequently re-delivered by her to be exchanged for a paid-up policy, which was never obtained. The testimony did not establish that Loretta Wilson Hartley was aware of the contents of the agreement of March 11, 1927, and there is no testimony whatever to show that she ever agreed to hold in trust for Lucy A. Hartley any part of the proceeds of the policy in suit. I find an entire lack of any evidence tending to establish either an express or implied trust relationship of the character set up in the answer of Lucy A. Hartley; and the facts do not warrant a finding of a constructive trust.

I think there can be no doubt as a matter of law that J. W. Hartley had the legal right to name Loretta Wilson Hartley as the beneficiary under the policy even though it is found (and I think the facts of the case would justify finding) that the second marriage was invalid by reason of the non-existence legally of the alleged Ohio divorce. The designation of Loretta Wilson Hartley as wife in the insurance certificate involved in this case was merely a further description. The designation of the beneficiary was not merely to "his wife" but to a named individual, Loretta Wilson Hartley, with further description of relationship as wife. The definite name here controls as a matter of designation of the individual over the alleged relationship. There is no doubt that Loretta Wilson Hartley was intended to be named as the beneficiary of this policy and it is equally clear from the testimony that it was not the intention at any time of J. W. Hartley to make Lucy A. Hartley the beneficiary of this policy. In these circumstances, there is no legal basis or authority to take from Loretta Wilson Hartley any part of the proceeds of the policy and transfer them to Lucy A. Hartley. The only legal basis for such a claim would be the finding from the testimony of an express or implied agreement on the part of Loretta Wilson Hartley to hold the proceeds of the policy to the extent of $5,000 for the benefit of Lucy A. Hartley, or at least some definite agreement capable of enforcement by decree for specific performance whereby J. W. Hartley assumed the obligation to transfer this particular policy to the extent of $5,000 to Lucy A. Hartley by changing the beneficiary during his lifetime.

It is regrettable that J. W. Hartley did not perform his legal obligation and express promise to his lawful wife. Her claims could doubtless have been enforced against his estate, if he had left any, but this suit is not against his estate, and this policy is not an asset of his estate. And it cannot be said he was under no obligation to Loretta Wilson Hartley as the testimony as a whole does not establish her lack of good faith in the second marriage. .

The applicable life insurance law is well established. We are not dealing here with a policy or certificate issued by a fraternal beneficial association which, either by statutes of the state of its incorporation or by provisions of its constitution or by-laws, restricts permissible beneficiaries to certain classes of relatives or dependents. It is true that under the facts here existing there are decisions which would tend to support the claim of Lucy A. Hartley if the policy were of that class, Meinhardt v. Meinhardt, 117 Md. 426, 83 A. 715; Electrical Workers Benefit Ass'n v. Brown, 58 App. D. C. 203, 26 F.(2d) 981; Richards on Insurance, (4th Ed.) § 326, although there are cases apparently to the contrary, James v. Supreme Council Royal Arcanum, 130 F. 1014 (C. C. Mo.); Frank v. Frank, 209 Ala. 630, 96 So. 859, 32 A. L. R. 1478, and the cases collected in the annotation thereto, pages 1481 to 1484. Nor are we dealing here with the possible effect of a misdescription of the named beneficiary, his wife, as a ground for avoiding the policy. The insurer here makes no such point but has acknowledged its liability and paid the whole amount of the policy into court. On the contrary, we are dealing here with an admittedly valid policy issued by an ordinary or regular life insurance company (sometimes referred to as an old line or stock insurance company) which does not limit or restrict the designation of beneficiaries to any particular class or classes and where, therefore, any person may be named as a beneficiary who has a valid insurable interest. Nor is the narrower question here presented as to whether Loretta Wilson Hartley had such an insurable interest in the life of J. W. Hartley as would have authorized her to have personally and originally obtained the policy, naming herself as beneficiary; because the particular policy was originally issued at the instance of the insured himself and at that time made payable to his estate and subsequently he voluntarily changed the beneficiary by naming Loretta Wilson Hartley. This was in effect an assignment of the policy, valid and effective even though there was no insurable interest on the part of the assignee. Grigsby v. Russell, 222 U. S. 149, 32 S. Ct. 58, 56 L. Ed. 133, 36 L. R. A. (N. S.) 642, Ann. Cas. 1913B, 863; Richards on Insurance (4th Ed.) §§ 49 to 51. In this case the designation of Loretta Wilson Hartley as "wife" being obviously a matter of further description only, the policy was a valid contract in her favor, even if she was not the lawful wife. Numerous decisions, both state and federal, so hold. Meinhardt v. Meinhardt, 117 Md. 426, 432, 434, 83 A. 715; Dittmaier v. Heptasophs, 135 Md. 312, 316, 108 A. 794; Equitable Life Insurance Company of Iowa v. Cummings (C. C. A. 3) 4 F.(2d) 794; James v. Supreme Council Royal Arcanum, 130 F. 1014 (C. C. Mo.); Watson v. Centennial Mut. Life Ass'n, 21 F. 698 (C. C. Mo.); 32 A. L. R. 1481 note; 37 C. J. p. 567, § 326; Cyc. Insurance Law (Couch) vol. 2, § 371. The doctrine of Daly v. Daly, 138 Md. 155, 113 A. 643, that equity will aid formally defective assignments of policies or changes of beneficiaries therein, can have no application to this case where there was at no time any effort on the part of the insured to change the beneficiary and no evidence of any intention at any time on his part to do so.

I will, therefore, sign a decree for the payment of the balance of $5,000 less expenses to be duly allowed, to Loretta Wilson Hartley.