**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 25-1288**

---

BELTWAY PAVING COMPANY, INC.,

       Plaintiff - Appellant,

    v.

PRUCO LIFE INSURANCE COMPANY; LISA M. MOORE, Personal Representative of the Estate of Timothy S. Moore,

       Defendants - Appellees.

---

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Brendan A. Hurson, District Judge.  (8:21-cv-00264-BAH)

---

Argued:  December 11, 2025                    Decided:  February 27, 2026

---

Before NIEMEYER, WYNN, and BENJAMIN, Circuit Judges.

---

Affirmed by unpublished opinion.  Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Benjamin joined.

---

**ARGUED:**  Eden Joanna Brown Gaines, BROWN GAINES LLC, Washington, D.C., for Appellant.  Brian Patrick Donnelly, WERTHER & MILLS, LLC, Rockville, Maryland; Christina M. Carroll, DENTONS US LLP, Washington, D.C., for Appellees.  **ON BRIEF:** Tony K. Lu, DENTONS US LLP, Boston, Massachusetts, for Appellee Pruco Life Insurance Company.

---

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

This case arises out of a disagreement over the rightful beneficiary of a $1 million life insurance policy between the beneficiary designated in the policy and Beltway Paving Company, Inc., a Maryland corporation, whom the policy's owner may have thought about naming as beneficiary but never appeared to make that decision, nor took any steps to effect it.

Pruco Life Insurance Company ("Pruco") issued a life insurance policy in 2017 to Timothy Moore, who designated his business associate, Michael Williams, as the sole beneficiary. Moore and Williams were business partners in Beltway Paving, and the company paid the premiums for the policy. Under the terms of the policy, if Williams predeceased Moore, the death benefit would be paid to Moore's estate.

Williams, the beneficiary of the policy, unexpectedly died in February 2020. Moore then, along with Williams's daughter, Christine Williams-Murphy, met with Moore's insurance agents, Craig Schubert and Denice Warfield, in March 2020, to discuss life insurance options related to at least two policies that the agents had issued. In addition to the 2017 policy issued to Moore, Pruco had also issued a $1 million life insurance policy to Beltway Paving in 2015 on Moore's life, as a key person in the business. In the meeting, Schubert and Warfield explained the policies and reviewed various options. According to both Schubert and Warfield, they pointed out that Williams was the sole beneficiary of the 2017 policy and that if they did not change the beneficiary, the death benefit would be payable to Moore's estate upon his death. Testifying about the meeting, the agents said "at no time during the March 5, 2020 meeting (or at any time before or after that) did either

2

Moore or Williams-Murphy ever question the fact that Williams was the sole beneficiary of the 2017 policy, much less indicate that he was not the intended beneficiary or that he had been named as the beneficiary by mistake or through error." Williams-Murphy did not contradict the insurance agents' testimony, having no recollection of whether the meeting even took place.

Shortly after the meeting, insurance agent Schubert sent Moore and Williams-Murphy an email summarizing the March 5 meeting and stating that "[f]rom our conversation Tim [Moore] and Christine [Williams-Murphy] wanted to have $500k go to their spouses directly and for Beltway to have $2m for Tim and $3m for Christine as part of the [stock-related] Buy/Sell agreement. Also having policies with cash value to help create a fund for buying out shares due to disability, retirement or voluntary separation." In a table listing Moore's policies, agent Schubert included the 2017 policy, "recommend[ing] change" for the policy to "[c]onvert to Index Universal Life; change owner and beneficiary to Beltway."

Schubert never received a response to this email, and Williams-Murphy testified she did not remember speaking with Schubert after the email. Agent Warfield sent additional follow-up emails regarding the 2017 policy on September 9 and September 29, 2020, but again neither Moore nor Williams-Murphy responded. According to Schubert and Warfield, "[a]t no time . . . did Moore or Williams-Murphy authorize or instruct . . . [Pruco] to proceed with a beneficiary change."

A few months later, in November 2020, Moore died, and, following the terms of the 2017 policy, Pruco paid the death benefit of $1 million to Moore's estate.

3

Beltway Paving, now controlled by Williams-Murphy as the majority shareholder and its CEO, commenced this action contending that the benefits of the 2017 policy should have been paid to Beltway Paving. It sought a declaratory judgment that Beltway Paving was the owner and beneficiary of the 2017 policy, and it made a claim against Moore's estate to return the proceeds under a theory of unjust enrichment.

The district court granted summary judgment to Pruco and Moore's estate, concluding that Beltway Paving had failed to produce sufficient evidence to support its claim that the company was the intended beneficiary of the 2017 policy or that Moore had intended and taken any steps to change the beneficiary to name Beltway Paving. From the district court's judgment, Beltway Paving appealed.

This appeal presents the straightforward question of whether Beltway Paving provided sufficient evidence to show that it was the intended beneficiary of the 2017 policy and that Moore's estate was thereby unjustly enriched when it received the policy's $1 million benefit upon Moore's death. We agree with the district court that the evidence was insufficient to send this case to the jury.

First, there was no evidence that Moore accidently or by error named Williams as the beneficiary in the 2017 policy. To the contrary, both of the insurance agents testified that the policy accurately represented both Moore and Williams's intentions. Indeed, that fact was highlighted by the fact that Beltway Paving had taken out the 2015 policy on Moore's life as a "Key Person," naming Beltway Paving as the beneficiary, thus distinguishing the 2015 policy from the 2017 policy. Second, there was also insufficient evidence to support any finding that Moore or Williams intended that Beltway Paving be

4

the beneficiary of the 2017 policy.  Finally, there was no evidence after Williams's death to indicate that Beltway Paving was the new intended beneficiary of the policy.  While the insurance agents, Schubert and Warfield had a meeting to discuss potential changes to the policy, indeed recommending a change, the evidence shows, without dispute, that neither Moore nor Williams-Murphy ever took any steps to change the beneficiary of the 2017 policy or even to indicate an intent to make the change.  *See Durst v. Durst*, 232 Md. 311, 317 (1963) (noting that an insured "must comply with the provisions of a policy regulating a change of beneficiaries" for that change to be effective (citing *Daly v. Daly*, 138 Md. 155 (1921))).  Crucially, for a change of beneficiary to be effective on an equitable basis, despite the policy owner's failure to actually effect the change, the policy owner must have "do[ne] all in his power to effectuate the change."  *Id*. (collecting cases); *see also Lingham v. Harmon*, 502 F. Supp. 302, 306 (D. Md. 1980) ("The great weight of authority in this country appears to endorse the general principle that the insured, in order for the change of beneficiary to be effective, *must have determined to change the beneficiary and must have done everything to the best of his ability thereafter to effect the change*") (collecting cases) (emphasis added); *Reid v. Durboraw*, 272 F. 99, 101 (4th Cir. 1921) (courts have "no power" to change the beneficiary in a valid insurance contract unless the insured "has done all that he could to comply with the conditions, and has been prevented by circumstances beyond his control from meeting the requirements").

Here, Beltway Paving has provided no evidence that Moore actually intended or decided to change the beneficiary of the 2017 policy to Beltway Paving, or that he took specific steps to make the change — let alone did "all in his power to effectuate the

5

change." *Durst*, 232 Md. at 317. While agents Schubert and Warfield offered to make changes, indeed recommending some, neither Moore nor Williams-Murphy communicated further, taking no steps to indicate that they wanted a change or directing that a change be made. Absent such evidence, Pruco properly paid the death benefit of the 2017 policy to Moore's estate, as required by the policy itself.

The judgment of the district court is accordingly

AFFIRMED.