**PROVIDENT LIFE & ACCIDENT INS. CO.**
**v. DOTSON et al.**

Civ. A. No. 543.

United States District Court
S. D. West Virginia, Huntington Division.

Oct. 6, 1950.

Steptoe & Johnson and Charles W. Yeager, of Charleston, W. Va., for plaintiff.

F. H. Combs, of Grundy, Va., and Buford C. Tynes, of Huntington, W. Va., for defendant Amanda Dotson.

Joseph W. Fitchett, of Huntington, W. Va., for defendant Clemmie Dotson.

WATKINS, District Judge.

This is an action of interpleader brought by plaintiff insurance company to determine whether Clemmie Dotson, wife, or Amanda Dotson, mother of the insured, is entitled to the proceeds of a group life insurance certificate issued to Robert Dotson, now deceased.

Plaintiff issued its group policy of life and accident insurance to Panther Coal Company, of Blackey, Virginia, on May 1, 1945. Robert Dotson, an employee of the coal company, made application for and received a certificate in the group policy which provided for payment of $500 "to the beneficiary designated by the Employee" in event of death. He died on May 9, 1949, from gunshot wounds inflicted by another person. The insurance company has paid the proceeds of the certificate amounting to $517.50 into court.

When the certificate was issued Clemmie Dotson, who was then the wife of Robert Dotson, and living with him, was named beneficiary in the policy, however, the policy reserved to Robert Dotson the right to change the beneficiary. The policy provided: "The Employee may at any time and from time to time during the continuance of his insurance, change any designated beneficiary by filing a written request at the Home Office of the Company, such change to take effect only when endorsed by the company on this certificate during the lifetime of the Employee .* * * ."

About three weeks before he died, the assured called at the office of the coal company and requested Elmer E. Snellenberger and Paul Thompson, agents of the insurance company, to change the beneficiary in his policy from his wife to his mother. He was told that they did not have but would procure the form upon which to request this change in beneficiary. He returned a week or two later, shortly before his death, and made a second request that the beneficiary be changed from his wife to his mother, but was told that they had not yet received the regular form for making written request for such change in beneficiary. He was killed before the blanks were received and filled out for change of beneficiary.

It is clear from the evidence that the assured intended that his mother, and not his wife, should collect the insurance, and that the assured did everything within his power to effect such change of beneficiary. Therefore, it would serve no useful purpose to discuss the marital difficulties which caused the defendant to make the change. It is also clear that the only reason the change in beneficiary was not made in strict compliance with the insurance policy was due to the fault or neglect of the agents of the insurance company in neither having nor procuring the written forms required by the insurance company. Had the company agents, charged with the duty of taking care of such matters, kept a supply of such forms on hand, or had they not neglected to obtain such forms, it is clear that the change in beneficiary would have been made in strict compliance with the procedure required by the insurance company. The intention and efforts of the assured to change his beneficiary may not be defeated by the negligence of the company's agents in failing to make available to him the appropriate form upon which to make written request for change of beneficiary. Daly v. Daly, 138 Md. 155, 113 A. 643; Starling v. West Virginia & Kentucky Ins. Agency, 110 W.Va. 219, 157 S.E. 399; Somog v. West Virginia & Kentucky Ins. Agency, 110 W.Va. 205, 157 S.E. 400; Union Mutual Life Ins. Co. v. Lindamood, 108 W.Va. 594, 152 S.E. 321.

It seems clear that Snellenberger and Thompson were agents of the insurance company. They were employees of the coal company, but were also engaged by the insurance company to solicit the coal miners in an effort to get as many of them as possible to avail themselves of the group insurance plan. For this service the insurance company paid them one dollar for each new application sent in. The insurance company furnished them with all necessary forms, including the forms for change of beneficiary.

The laws of Virginia require insurance agents to take out a license, showing the company they represent. Michie's 1942 Virginia Code, Sec. 4235, subds. 1 and 2. Snellenberger was so licensed as an agent of this particular insurance company to solicit insurance at the time the assured took out his certificate and at the time he requested the change in beneficiary. Thompson worked under Snellenberger and assisted him in his insurance activities. Another Virginia statute provides that: "A person who is authorized by any company to solicit insurance or applications therefor shall in any controversy between the insured or his beneficiary and the company be held to be the agent of the company which issued the insurance solicited or so applied for, anything in the application or policy to the contrary notwithstanding." Virginia Code, Section 4222(d).

Another Virginia statute provides that "* * * no policy of industrial life insurance shall be issued or delivered in this State, * * * if it contains * * * A provision to the effect that the agent soliciting the insurance is the agent of the person insured under said policy, or making the acts or representations of such agent binding upon the person so insured under said policy." Virginia Code, Section 4258l (c). These statutes were in effect when this insurance contract was entered into in May, 1945 and are still in full force and effect.

Where the failure to make the change in beneficiary is due solely to the negligence of the insurer in failing to supply the proper forms, the court may hold the change accomplished regardless of the failure to comply strictly with the mode of change. Reid v. Durboraw, 4 Cir., 272 F. 99. For good annotations on the subject, see 78 A.L.R. 970, 151 A.L.R. 274. Daly v. Daly, supra. Under such circumstances the majority of the courts will give effect to the change where the insured has done everything within his power to designate a new beneficiary, and only ministerial acts remain to be performed by the insurer thereafter.

The majority rule is that provisions for change of beneficiary are for the benefit of the insurer alone, and that the insurer alone may question the eligibility of beneficiaries. The insurer alone can insist upon strict compliance with provisions in the policy as to mode of change of beneficiaries. It alone can waive compliance, and

non-compliance with such provisions will not afford any ground for attack by the original beneficiary. If the insurer does not object to strict compliance with the provisions, the change becomes effective on the theory of waiver. Arrington v. Grand Lodge of Brotherhood of Railroad Trainmen, 5 Cir., 21 F.2d 914, certiorari denied 276 U.S. 591, 48 S.Ct. 213, 72 L.Ed. 733.

It is the general rule that by bringing an interpleader action and paying the fund into court, the insurance company waives its right to insist upon strict compliance with the terms of the policy with reference to change of beneficiary, such as making the request in writing instead of orally, or endorsement of such change upon the policy. Even the act of the insured in erasing the name of one beneficiary from his certificate has been held ratified by interpleader, and a person not even named in the certificate has been permitted to claim benefit as against named beneficiaries. Brett v. Warnick, 44 Or. 511, 75 P. 1061; Bills v. Bills, Tex.Civ.App. 207 S.W. 614. When it appears that the insured actually attempted to make a valid change of beneficiary the courts will give effect to his intention. As stated in Union Mutual Life Insurance v. Lindamood et al., supra [108 W.Va. 594, 152 S.E. 322]: "Where the insured has done all that he is required to do and only formal ministerial acts on the part of the insured remain to be done in order to complete the change, equity will treat it as having been made. 'Equity will aid in attempted, but incomplete, change of beneficiary; * * * when the insured in good faith has attempted to comply with the prescribed mode of change. Equity will, in such case, consider that done which ought to have been done, and will not require impossibilities.' Cooley's Briefs on Insurance, p. 6455. 'If, however, the insured has done substantially all that is required of him to effect a change of beneficiary, and all that remains to be done are the ministerial acts of the officers of the association (insurer), the change will take effect, though the formal details were not completed before the death of the insured.'"

In Daly v. Daly, supra [138 Md. 155, 113 A. 647], the facts were very similar to those here. The insured requested the agent of the employer who had charge of the group insurance department of the employer to make a change in his certificate by making his wife the beneficiary and the only reason the change was not made at once was because the agent did not have the blanks which were furnished to him for that purpose. He neglected to get the blanks before the insured died. In holding that the change of beneficiary had been completed, and awarding the proceeds to the wife, the court said: "There can be no doubt of the insured's desire and intention to change the beneficiary or that he did all in his power to effect the change, and the only reason a more formal application was not made, and noted on the insurance register of the society, was because the society or the employer had failed to furnish its or their agent the blanks used for that purpose, or because its or their agent failed to give him a blank in accordance with his promise to do so."

Here it is urged that the right of the wife became vested upon the death of the assured. But it is well settled that the right of a named beneficiary vests at the death of the insured only if no change in beneficiary has been made, and that the latter depends not merely upon the records in the office of the company at the moment of death of the insured but also upon what steps have been taken by the insured prior to death. Johnston v. Kearns, 107 Cal.App. 557, 290 P. 640; Annotation 151 A.L.R. 274.

From the foregoing authorities it appears: (1) That the insured did everything within his power to effect the twice requested change in beneficiary; that strict compliance with the formal provisions of the policy was due entirely to the fault and neglect of the agent of the insurance company, and in such cases equity will consider that done which ought to have been done; and (2) Such provisions in the policy relating to the mode of change of beneficiary are for the benefit of the insurer alone, and the insurer has waived strict compliance with such provisions by bringing this interpleader action and paying the proceeds of the policy into court. The defendant Amanda Dotson, mother of assured, is en-

titled to the proceeds of the insurance certificate.

Attorneys for the plaintiff. have asked that they be paid a reasonable attorney fee out of the proceeds of such policy. Ordinarily I have allowed such requests in cases of this type. But here it does not seem fair that the insurance company should have its counsel paid from this fund. The litigation was not caused by the fault of either claimant but is chargeable to the plaintiff insurance company through the fault of its agent. Under such circumstances it is proper for the court to refuse to allow plaintiff its attorneys' fees. United Mutual Life Ins. Co. v. Lindamood, supra.

An order may be entered in accordance with the views expressed above.