HUBBARD, ADMINISTRATRIX *v.* DICKEY.

5-544                                                274 S. W. 2d 60

Opinion delivered December 20, 1954.

[Rehearing denied January 24, 1955.]

*Shaver & Shaver,* for appellant.

*Giles Dearing* and *Rieves & Smith,* for appellee.

J. SEABORN HOLT, J.   This is a suit by B. C. Dickey to foreclose a mortgage lien, alleged to amount to $29,-680.14.   March 30, 1949, R. G. Hubbard borrowed from appellee, Dickey, $20,000, evidenced by two notes of $10,-000, each, and on even date executed as security a first mortgage on Hubbard's land in the form of a Deed of Trust. . This Trust Deed also covered any and all future advances made by Dickey.   Mr. Hubbard died intestate July 5, 1951, and Artie Lee Hubbard, who was his wife, is the administratrix of his estate.

It appears that Hubbard used most of the above $20,000 which he received from Dickey to pay his (Hubbard's) then existing debts and to clear the land mortgaged to Dickey of all liens so that the mortgage became a first lien.

Thereafter, Hubbard needed rather large sums of money with which to operate his farming interests in 1948, 1949, 1950 and 1951, and succeeded in borrowing from two Memphis companies, Lytle McKee & Co., a partnership (in which Dickey was interested as a partner) and Farmers Agri. Credit Corp.,—intervenors herein,—giving to these companies a second mortgage lien on this property as security. . These two companies refused to continue loans and advances to Hubbard until he agreed in writing to let Dickey, as Hubbard's agent (or Dickey's agent sellers), oversee and manage Hubbard's farming operations and all money advanced and loaned by them to Hubbard. Hubbard agreed to this arrangement in writing on March 21, 1949, and this arrangement was continued thereafter until his death.

On a trial December 19, 1953, the Chancellor found (1) that Hubbard at the time of his death was indebted to B. G. Dickey in the amount of $29,680.14 together with 6% interest from December 5, 1952, plus $255.56; (2) that Hubbard and his wife, Artie Lee, were indebted, at the time of Hubbard's death, to W. L. McKee, Jr., and Lewis K. McKee, as sole surviving and liquidating partners of Lytle McKee & Co., in the amount of $24,080.90 for money borrowed on April 4, 1949, together with interest, which note, with any further advances, was secured by a second mortgage on the land here involved, and that on the date of trial, December 19, 1953, Hubbard and his wife were indebted for a balance due in the amount of $13,277.36 with interest; and (3) that Hubbard was indebted to Farmers Agri. Credit Corp. in the amount of $1,676.33 with interest, also secured by a second mortgage on the land involved, and that the mortgage lien held by B. G. Dickey is first and the lien held by Lytle McKee & Co. and Farmers Agri. Credit Corp. is second. From the decree on the court's findings is this appeal.

— (1) —

Appellants first contend that the judgment in favor of Dickey against the administratrix is excessive and

should be reduced first by an item of $2,454.47 which represented the amount of a note dated December 27, 1947, that Hubbard owed J. E. Hollan & Son and which was paid by Dickey March 17, 1948. Appellants contend that this item was paid twice by Hubbard. We cannot agree with this contention.

The record reflects that Dickey on March 17, 1948, paid this sum to J. E. Hollan & Son in satisfaction of a mortgage owed by Hubbard. The amount was then entered as a charge against Hubbard in the accounts kept by Dickey. Nine days later Dickey drew a draft on Lytle McKee & Co. for $6,976.15, which the appellants say included the $2,454.47 item previously paid by Dickey to Hollan. But the amount of the Lytle McKee draft was entered as a credit to Hubbard in Dickey's accounts; so when the charges and credits were totaled for the purpose of arriving at a balance the charge and the credit canceled each other. The result was that the challenged item was entirely removed from Dickey's books and appears as a charge against Hubbard only in the accounts of Lytle McKee & Co. This is as it should be, for **Lytle** McKee & Co., in effect, paid the mortgage by reimbursing Dickey for what he had paid out for Hubbard.

— (2) —

Appellants also argue that the judgment in favor of Dickey should be credited with ''a pro rata share of $15,-143.23, being the proceeds of a $15,000 insurance policy paid to Mr. Dickey and Lytle McKee & Co. on August 20, 1951.'' We do not agree. The record shows that on September 18, 1948, Hubbard, in order to secure debts he owed to Lytle McKee & Co. and Dickey made a written assignment of the policy in question to Lytle McKee & Co. and Dickey. This assignment contained this recital:

''For value received, I, being of legal age, hereby assign and transfer unto Lytle McKee & Co. and B. G. Dickey of Memphis, Tenn., 89 E. Front St. and Earle, Arkansas, respectively, the policy of insurance known as

No. 21122923 issued by the New York Life Insurance Company upon the life of George R. Hubbard, of Parkin, Arkansas, and all dividend, benefit and advantage to be had or derived therefrom, subject to the conditions of the said policy, and the rules and regulations of the Company, and to any indebtedness to the New York Life Insurance Company against said policy. Witness my hand and seal this 18th day of September nineteen hundred and forty-eight. /s/ George R. Hubbard.''

Following Hubbard's death, August 20, 1951, the New York Life Insurance Company delivered its check for $15,143.23 to Lytle McKee and Co. and Mr. Dickey, whereupon Dickey endorsed the check over to Lytle McKee & Co., which this company credited on Hubbard's debt of $24,080.90, evidenced by Hubbard's note to Lytle McKee & Co. on April 14, 1949, and secured by second mortgage on the above land. This assignment on its face is a joint assignment to Lytle McKee & Co. and Dickey. It does not limit the application of the proceeds from the policy in any respect except that it was assigned to Lytle McKee & Co. and Dickey to secure all indebtedness owed to each. Under the terms of the policy, Hubbard could change the beneficiary. We see no reason why Dickey, as a joint assignee, could not waive his claim in favor of Lytle McKee & Co., as he chose to do here.

''The operation and effect of an assignment of an insurance policy are in general, governed by the rules pertaining to other assignments. The effect of an assignment on the insurance contract is controlled by the terms and the circumstances of the contract of assignment itself. In the absence of any limitation in the assignment, it passes to the assignee all the rights of insured.'' 45 C. J. S. 59, § 435, sub.-sec. a.

''The assignee of a policy of insurance, such as life insurance, assigned by way of security, in general, occupies the same status with respect to the rights and liabilities under the policy which the insured occupied, to the extent of the indebtedness for which the policy was assigned as collateral.'' 45 C. J. S. 61, § 438, sub.-sec. a.

In *Moon* v. *Williams, et al.*, 102 Fla. 214, 135 So. 555, it was said: "The effect of the assignment of a life insurance policy, which assignment is made in accordance with the terms of the policy is to place the assignee in the same status with respect to all rights and liabilities under it that the insured occupied before the transfer. It may be said to amount to the substitution for the assured of the assignee as a party to the policy. (Citing cases)." See, also, 6 C. J. S. 1448, § 91, sub.-sec. c.

Appellants further contend that the court erred in finding that Mr. Dickey was entitled to the proceeds from another policy in the amount of $10,000 in which Mrs. Hubbard was beneficiary and in directing the proceeds from said policy, $9,745.79, to be credited on Hubbard's debt to Dickey. We do not agree.

The facts are that on July 23, 1949, Hubbard assigned to Dickey this $10,000 policy as additional security on his debt to Dickey, and not, as appellants claim, as security for an insurance premium paid by Dickey for Hubbard. Mr. Dickey testified positively that such was the purpose of the assignment. The trial court so found and we think its finding was supported by a preponderance of the testimony.

It further appears that on February 1, 1949, Mr. Hubbard had changed the beneficiary, as was his right under the policy, to "Artie Lee Hubbard, wife of the insured" and on November 3, 1949, Mrs. Hubbard assigned her interest as beneficiary in said policy to her husband, G. R. Hubbard. But say appellants: "Said assignment is invalid because Artie Lee Hubbard, his wife, and beneficiary, did not join in said assignment or release her interest in said policy for such purpose."

As indicated, the policy gave Mr. Hubbard the right to change the beneficiary and he exercised that right. The policy in question provided: "Any assignment of this policy shall operate, so long as such assignment remains in force, and to the extent thereof, to transfer the interest of the then existing beneficiary, except that the interest of any irrevocable designated beneficiary can be

transferred only with the written consent of such bene-ficiary. . . .

"The insured may from time to time change the beneficiary unless otherwise provided herein by endorsement hereon."

The assignment of this policy was in full force at the time of Mr. Hubbard's death and said assignment operated to transfer all his interests to Dickey, as well as the interest of the *then* existing beneficiary, Artie Lee Hubbard. Therefore, Dickey, in the circumstances, had the right to apply the proceeds of this policy on the debt that Hubbard owed him.

We held in *Mente* v. *Townsend*, 68 Ark. 391, 59 S. W. 41, (Headnote 4): "Where a policy of insurance is made payable to assured's wife 'subject to the right of assured to change the beneficiary,' the assured may, without the wife's consent, change the beneficiary *pro tanto* by assigning the policy as security for a loan."

Affirmed.

Justice McFADDIN concurs.