The **OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA**, a corporation, Plaintiff,

v.

**Margaret Allie ROW, Margaret Allie Row as Administratrix c.t.a., d.b.n. of the Estate of Mary K. Allie, Margaret Allie Row as Executrix of the Estate of Ernest S. Allie, Robert C. Allie, and Betty Allie DeBoer, Defendants.**

Civ. A. No. 2296.

United States District Court
S. D. West Virginia,
Huntington Division.

July 28, 1967.

A. Michael Perry, Huddleston & Bolen, Huntington, W. Va., for plaintiff.

Duncan W. Daugherty, Daugherty & Daugherty, Huntington, W. Va., for defendant Margaret Allie Row, Margaret Allie Row as Admx. c. t. a., d. b. n. of Estate of Mary K. Allie, Margaret Allie Row as Ex'x of Estate of Ernest S. Allie.

Robert C. Allie, pro se.

Milton T. Herndon, Campbell, McNeer, Woods, Bagley & Emerson, Huntington, W. Va., for defendant Betty Allie DeBoer.

**CHRISTIE, District Judge:**

This is an interpleader action (28 U.S.C.A. § 1335) brought by the Occidental Life Insurance Company of California to determine the conflicting claims to the proceeds of a policy of life insurance on the life of Ernest S. Allie, of Huntington, West Virginia. There are no disputed issues of fact and the matter is before the Court on cross-motions for summary judgment by all parties except Margaret Allie Row, as Administratrix c. t. a., d. b. n. of the Estate of Mary K. Allie, and Margaret Allie Row, as Executrix of the Estate of Ernest S. Allie.

## FACTUAL BACKGROUND

On December 1, 1957, a decreasing term insurance policy was issued on the life of Ernest S. Allie, the insured, to Mary K. Allie, his wife, as owner and beneficiary. On or about March 12, 1962, Mary K. Allie, as owner of the policy, executed a request for conversion. Thereafter plaintiff issued to her, as owner and beneficiary, a modified life at age 70 type policy, with an initial face amount of $40,000.00 on the life of Ernest S. Allie, and it is the proceeds of this policy which is the subject matter of this controversy.

Mary K. Allie, the owner-beneficiary of the policy died May 19, 1966. On May 21, 1966, the insured, Ernest S. Allie, who was also the sole beneficiary under Mary K. Allie's will and the named executor thereof, contacted J. Hermansdorfer, a general agent of the insurer, located in Huntington, West Virginia, and advised him of a desire to change the beneficiary of the policy to his daughter, Margaret A. Row. The agent informed Mr. Allie that inasmuch as Mrs. Allie had been the sole owner and beneficiary of the policy it would be necessary to contact the home office regarding the procedure to follow. Nevertheless, Mr. Allie requested that he be allowed to complete a standard change of beneficiary form so that the company's preparation of the proper papers might be expedited. This was done. The agent also advised Mr. Allie that he was soon to be hospitalized for a serious operation and it was suggested that by the time he had recovered the necessary forms should be available. The executed form was forwarded by the general agent to the home office under a memorandum dated May 21, 1966. By a return memorandum from the home office dated May 27, 1966, the general agent was advised that the submitted form had been placed on file and marked "not used," since it had been signed by the insured. The general agent was then confined to a hospital recovering from a major operation performed May 23, 1966, and he had not returned to work when Mr. Allie died on June 3, 1966. The memorandum also contained a list of steps the company considered necessary to effectuate the change.[1]

Prior to his death, Mr. Allie qualified, on May 24, 1966, as executor of his wife's will, which devised and bequeathed all her estate to him. Margaret Allie Row qualified as executrix of his will on June 7, 1966. After devising his home and the furniture and household goods therein to his daughter, Margaret Allie Row, he bequeathed the residue of his estate equally to his three children, Robert C. Allie, Margaret Allie Row, and Betty Allie DeBoer. On July 14, 1966, Margaret Allie Row qualified as administratrix c. t. a., d. b. n. of the estate of Mary K. Allie.

## ISSUE

The narrow issue for determination is the effect, if any, of Ernest S. Allie's attempt to change the beneficiary of the policy two days after the owner-beneficiary's death and prior to his qualification

---

1. "A. If owner's estate has not been distributed we should be furnished with:

"1. A certified copy of Letters Testamentary or Letters of Administration, as the case may be.

"2. An assignment by the representative of Mary K. Allie's estate, which is supported by a certified copy of a court order permitting him to execute the assignment.

"3. A beneficiary form signed by the new owner, in duplicate, after the assignment has been made."

as executor of her will. While the issue is clear, its resolution is complicated in that it involves both equitable principles of insurance law and the limitations upon an executor-legatee in disposing of an expectancy that is tied to the legacy.

### APPLICABLE LAW

There are numerous reported cases involving instances wherein an insured has failed to follow the required change of beneficiary procedure in a life insurance policy and the circumstances under which a court, in the exercise of its equity powers, will nevertheless give effect to the attempted change.

■ In this, as in every diversity case, we are, of course, required to apply West Virginia substantive law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The general West Virginia law on this subject is stated in Union Mut. Life Ins. Co. v. Lindamood, 108 W.Va. 594, 152 S.E. 321, 322, and is as follows:

"It is undoubtedly the general rule that the mode prescribed in a life insurance policy for changing the beneficiary must be at least substantially followed. To this general rule, however, exceptions are recognized in the following cases: (1) Where the insurer has waived compliance with the prescribed regulations, or estopped itself to assert noncompliance therewith. (2) Where it is beyond the power of the insured to comply literally with the regulations. (3) Where the insured has done all that he is required

to do and only formal ministerial acts on the part of the insurer remain to be done in order to complete the change, equity will treat it as having been made. 'Equity will aid in attempted, but incomplete, change of beneficiaries; * * * when the insured in good faith has attempted to comply with the prescribed mode of change. Equity will, in such case, consider that done which ought to have been done, and will not require impossibilities.' Cooley's Briefs on Insurance, p. 6455. 'If, however, the insured has done substantially all that is required of him to effect a change of beneficiary, and all that remains to be done are the ministerial acts of the officers of the association (insurer), the change will take effect, though the formal details were not completed before the death of the insured.' Id., 6448: * * * 'On the principle that equity regards as done that which ought to be done, the courts will give effect to the intention of insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy.' 37 C.J. p. 585."

■ The factor which distinguishes the present controversy from the usual case in this area is that the beneficiary, rather than the insured, was the policy owner. As a result it is necessary to examine the rights that attached to these different capacities so that we may determine the effect of Mr. Allie's action. Under the terms of the policy,[2] Mrs.

2. The pertinent provisions of the policy in question are as follows:

"*Beneficiary Provisions*—The interest of any beneficiary who dies before the Insured shall terminate at the death of the beneficiary. The interest of any beneficiary who dies simultaneously with the Insured or dies within 30 days after the death of the Insured and before payment of any of the proceeds to that beneficiary shall also terminate. The proceeds will then be paid as though such beneficiary had died before the Insured. If the interest of all designated beneficiaries has terminated, any proceeds

payable because of the death of the Insured will be paid to the then owner of this policy, if living, otherwise to the executor or administrator of the owner.

"*Owner of Policy*—Before the death of the Insured, the owner of this policy alone shall be entitled to all rights granted by this policy or allowed by the Company under this policy. If the owner is a partnership, all rights of the owner belong to the partnership as constituted at the time a right is exercised. If the owner is an individual and dies before the Insured, all rights of the owner belong to the executor or administrator of

Allie, as owner, possessed the exclusive right to change the beneficiary. Nevertheless, it must be recognized that her interest as owner was separate and distinct from that possessed by her as the policy's named beneficiary. This latter interest gave her no absolute right to the proceeds, but rather it was a conditional interest subject to defeasance, which consisted merely of an expectancy during the life of the insured, contingent upon her remaining the beneficiary until the time of the insured's death. 29A Am. Jur. Insurance Sec. 1640 (1960). This expectancy ceased upon her death and her rights as owner vested, under the terms of the policy, in her executor.

■ It is significant that upon the policy owner's death her husband became possessed, in his several capacities as the insured, sole legatee of her personal property, and executor of her will with every right and incident of ownership connected with the policy. As a result, any action he may have taken in any of these capacities would necessarily be deemed to have been taken in his best interest in the others.

■ However, the contention is made that inasmuch as Mr. Allie had not qualified as executor of his wife's will at the time he advised the company's general agent of his desire to designate a beneficiary, his action was of no legal force or effect.[3] It is further urged that, even had he been the qualified executor of her will at the time, he could not have legally named a beneficiary since this would constitute a diversion of the estate's assets.[4] The fallacy of this argument is that while the ownership of the policy became an asset of the estate, the expectancy as beneficiary did not.[5]

the owner unless otherwise provided in this policy.

"CHANGE OF BENEFICIARY

"A change of beneficiary may only be made by filing a satisfactory written notice with the Company. A beneficiary designated irrevocably may not be changed except with the written consent of that beneficiary. A change of beneficiary shall not be effective until recorded at the Home Office of the Company. When so recorded, even if the Insured is not then living, the change of beneficiary shall take effect on the date the notice was signed, subject to any payment made by the Company before recording the change."

3. Code 44-1-1 (Michie's 1966) provides:
"A person appointed by a will executor thereof shall not have the powers of executor until he qualify as such by taking an oath and giving bond before the county court in which the will, or an authenticated copy thereof, is admitted to record, or before the clerk thereof in vacation, except that he may provide for the burial of the testator, pay reasonable funeral expenses and preserve the estate from waste."

4. Code 44-2-24 (Michie's 1966) provides:
"After the report of a commissioner on the claims against the estate of any decedent has been confirmed as aforesaid, and after one year from the time of the qualification of the first executor or administrator shall have elapsed, the personal representative may pay the claims allowed by the commissioner against the decedent's estate or certified to him by courts wherein judgments or decrees against the estate have been rendered, according to the order of payment set forth in the commissioner's report, and pay legacies and distribute the surplus among the parties entitled thereto in the amounts and proportions determined by the commissioner in his report as confirmed, withholding such sum as such report as confirmed states to be necessary for the payment of any contingent, unliquidated, or disputed claims, or claims not matured, or the proportions of any such equal to what is allowed to other creditors of the same class, and upon the determination from time to time of any such claims further payments and distributions may be made as the circumstances require. If the personal representative shall fail or refuse to pay claims and make distribution within three months following the time when he may legally do so, and no appeal has been taken from the order of confirmation of the report on claims, any party interested may institute a suit in chancery against such personal representative to compel payment and distribution
* * *."

5. This would be the case even if we assumed, without indicating an opinion, that the proceeds of this type policy falls with-

■ We believe that where the policy itself grants all the deceased owner's rights to an executor of the estate, the new owner-executor has the legal capacity to designate a new beneficiary. None of the assets available to the former owner's creditors are removed from the estate by such a step.

■■ In view of this determination the question becomes: What effect, if any, were the steps taken by Mr. Allie to have a beneficiary designated before his formal qualification as executor of his wife's will? It is an ancient and universal rule that the granting of letters testamentary or of administration relates back to the date of the death of the decedent. This doctrine is a legal fiction invented to bridge the interval that must elapse between the death of the owner of property and the orderly appointment of a person to care for and distribute it, thereby preventing injustice and giving a remedy where there would otherwise be none. 21 Am.Jur. Executors and Administrators Sec. 211 (1939). Under this rule all intermediate acts relating to the estate, by the recipient of the letters, which might rightfully have been done had he already been appointed, are validated. See annot. 26 A.L.R. 1351. If, under this doctrine, acts which the representative could have performed are deemed to be ratified, what was the legal effect of Mr. Allie's action insofar as the rules regarding substantial compliance with change of beneficiary provisions are concerned?

The circumstances surrounding the present situation are strikingly analogous to those found in Provident Life & Accident Ins. Co. v. Dotson, 93 F.Supp. 538 (S.D.W.Va.1950). In that case an insured requested the agents of an insurance company to change the beneficiary in his policy from his wife to his mother. He was advised that the necessary forms were not available but that they would be procured. The insured returned a week or two later and was told that the forms had not yet been received. He was killed before they were received. The Court states, p. 541:

"From the foregoing authorities it appears: (1) That the insured did everything within his power to effect the twice requested change in beneficiary; that strict compliance with the formal provisions of the policy was due entirely to the fault and neglect of the agent of the insurance company, and in such cases equity will consider that done which ought to have been done; and (2) Such provisions in the policy relating to the mode of change of beneficiary are for the benefit of the insurer alone, and the insurer has waived strict compliance with such provisions by bringing this interpleader action and paying the proceeds of the policy into court."

■ In the instant case it is seen that Mr. Allie advised the insurance company's general agent of his desire to change the beneficiary and filled out the standard form to effect this. In short he, at the time, did everything within his knowledge and power to bring about the desired change. If this did not comport with the company's requirements, it then became its responsibility to promptly advise him of the formal procedure to be

---

out the scope of the West Virginia insurance exemption statute (Code 33–6–27), because here the beneficiary's expectancy ceased at her death prior to the insured's. Sub-section (a) of this statute reads:

"If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, oth-er than the insured or the person so effecting such insurance or executors or administrators of such insured or the person so effecting such insurance, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person."

followed and to furnish him with the necessary forms. There can be little doubt that had this been done Mr. Allie could and would have complied with the requirements, whatever they might have been. No dereliction on his part is indicated or suggested, rather it was the untimely illness of the company's general agent and the company's failure to otherwise advise him of the procedure that accounted for the delay.

This unfortunate controversy has resulted in large measure because of one person's (the general agent) untimely illness and another's (Ernest S. Allie) death. It gives renewed witness to the unexpected suddenness with which life's thread too often breaks and how imperative it is for those whose business concern this contingency to act with utmost diligence. The theory underlying the equitable rule of substantial compliance with change of beneficiary provisions is, of course, to prevent the thwarting of an insured's wishes because of technicalities designed for the protection of the insured, and the courts must keep this in mind in considering cases of this sort. It is conceded that, insofar as the proceeds of the insurance policy are concerned, had Mr. Allie chosen some other method to make his daughter the recipient of his generosity he could have done so. Under the view we take, though other roads may have been less marred with legal chuckholes, in the eyes of the law the action taken was sufficient to reach the intended destination.

Under the terms of the policy the executor of the deceased owner's will became possessed of all the policy's rights. Mr. Allie was the executor, sole legatee of the deceased owner-beneficiary's personal property, as well as the named insured. There may be situations where such a combination of relationships must be dealt with separately; such would be the case where the executor and the legatee are different individuals. Under such circumstances it is doubtful that the executor would be permitted to designate a new beneficiary without the acquiescence of the policy's new owner.

Those circumstances do not confront us here and there is no reason apparent—legal or equitable—requiring us to close our eyes to the realities of Mr. Allie's total relationship to this insurance policy.

Whatever his reason for doing so, Mr. Allie made an unequivocal attempt to effect a change of beneficiary to Margaret Allie Row. At the time he possessed every incidence of authority necessary to do so, save the bare formality of qualifying as executor of his wife's will. The letter of instruction from the Home Office, dated May 27, 1966, cannot be construed to be an outright or unequivocal rejection of the requested change. The fact that the executed form was simply marked "not used" rather than rejected and returned is significant. It indicates that the insurer was holding it in reserve for just such a contingency as Mr. Allie's death before the instructions could be complied with. Under such circumstances, the equitable rule of considering done that which ought to have been done applies with all its force and vigor.

For the reasons appearing herein it is determined that, in the circumstances of this case, the action of Ernest S. Allie of May 21, 1966, was sufficient notice to the plaintiff insurance company to effect a change of beneficiary and was a substantial compliance with the change of beneficiary provisions of the policy. Therefore, Margaret Allie Row, in her individual capacity, is rightfully entitled to its proceeds and she will be awarded summary judgment accordingly. The motions for summary judgment of Robert C. Allie and Betty Allie DeBoer, who claim a share of the policy proceeds through the will of Ernest S. Allie, will be respectively denied.

### INTEREST

The secondary question, raised by the defendants Robert C. Allie and Betty Allie DeBoer in their respective motions for summary judgment and by a like motion by the plaintiff insurance company, is whether or not the plaintiff's delay in instituting this action was unreasonable, under the circumstances, and as a con-

sequence it should be held liable for interest on the proceeds of the policy for the time between receipt of proof of Ernest S. Allie's death and the start of this lawsuit. Mr. Allie died June 3, 1966, and this action was commenced January 5, 1967. The defendant, Margaret Allie Row, has not raised the question either in her individual or representative capacity.

■ Since the Court has determined that neither Robert C. Allie nor Betty Allie DeBoer has any interest in the policy proceeds, the question of interest, therefore, becomes moot. But notwithstanding, this Court feels that the question should be ruled upon here so that if, on appeal, the appellate court takes a different view with respect to claims of these parties to the policy proceeds, this Court's ruling on the question of interest will be in line for review also.

■ The general rule appears to be that whether interest is or is not payable depends upon whether, in the circumstances of the case, the delay was reasonable or unreasonable. Passage of time without more does not constitute an unreasonable delay. Illinois Bankers Life Assurance Co. v. Blood, 69 F.Supp. 705 (N.D.Ill.1947). Nor does the mere fact that the insurer has had the use of the money during the delay require payment of interest. Aetna Life Insurance Co. v. Du Roure, 123 F.Supp. 736 (D.C.N.Y. 1954).

■ The insurer has filed with its motion for summary judgment the supporting affidavit of the manager of its claims department, and the contesting defendants have filed no counter-affidavits. The claims manager contends in his affidavit that the delay was occasioned by the conflicting claims asserted to the policy proceeds and the inability of the claimants to agree among themselves on a distribution thereof. There is no question but that there were conflicting claimants to the policy proceeds preventing the insurance company from making speedy payment, and the affidavit and correspondence submitted with Robert

C. Allie's motion establish that there was reason for the company to believe that the parties would be able to resolve the matter among themselves. Under such circumstances, this Court believes the plaintiff company acted in good faith in its belief that the claimants would be able to resolve their own differences and moved with reasonable diligence in instituting this interpleader action and paying the policy proceeds into the Registry of the Court once it became apparent to it that the conflicting claims would not be amicably settled by the claimants themselves. Thus, had the Court found that Robert C. Allie and Betty Allie DeBoer were entitled to the policy proceeds their motions for payment of interest thereon would be denied, and the motion of the plaintiff insurance company to be relieved of the duty to pay any interest would be granted.