**William E. DENNIS, Plaintiff,**

v.

**AETNA LIFE INSURANCE AND ANNUITY COMPANY, Defendant.**

**No. 2:94cv492.**

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 17, 1995.

Jon C. Poulson, Accomac, VA, for plaintiff.

Carter B.S. Furr, Norfolk, VA, for defendant.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This case is before the Court on each party's motion for summary judgment. Because the Court finds no material issue of fact, and resolves all legal issues in favor of Defendant, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion.

### I. Factual and Procedural History

In 1987, Dorothy Dennis purchased a life insurance policy on her own life from Aetna Life Insurance and Annuity Company ("Aetna"), with a face amount of $100,000.00. She named her husband, William, Plaintiff in this case, as beneficiary. Sometime in the fall of 1992, Mr. and Mrs. Dennis discussed changing her coverage from Aetna to The New England Mutual Life Insurance Company ("The New England").

Mrs. Dennis decided to engage in a tax-free section 1035 exchange, whereby a policyholder assigns her rights in a policy to a new insurer, who then requests the cash surrender value of the old policy and applies the funds to the purchase of a new policy. On October 12, 1992, Dorothy Dennis executed an Absolute Assignment of her ownership rights in the Aetna policy to The New England. The assignment designated The New England as the beneficiary, replacing William Dennis. The same day, The New England issued and delivered a temporary life insurance policy to Dorothy Dennis. Mrs. Dennis engaged in this transaction through her agent, Darryl Hoffman, and the Rockwell . Organization, an insurance agency representing The New England.

On or about December 4, 1992, Ronald Becker, a vice president of The New England, mailed to Aetna the Absolute Assignment, the Aetna policy, and a request for Aetna to pay The New England the cash surrender value of the policy. On December 16, 1992, Rebecca Patterson of the Rockwell Organization contacted an Aetna representative to inquire whether Aetna had taken any action on the section 1035 exchange. The Aetna representative advised Ms. Patterson that Aetna had no record of the assignment or surrender request. Ms. Patterson then faxed a copy of the assignment, the face sheet of the policy, and the surrender re-

quest to Joan Cook of Aetna. An Aetna representative advised Ms. Patterson that Aetna would not act on the policy for at least twenty days, to provide Aetna's agent an opportunity to speak with Mrs. Dennis in an effort to convince her to remain with Aetna.[1]

Later on December 16, 1992, Darryl Hoffman called the Dennises to advise them of the status of the section 1035 exchange. He then learned that Dorothy Dennis had committed suicide earlier that day. The next day, Mr. Becker, with William Dennis' concurrence, advised Aetna not to proceed with the exchange and to consider the documents withdrawn.

Sometime in January, 1993, Aetna located the assignment and surrender documents that The New England mailed on December 4, 1992, to 151 Farmington MB 58, Hartford, Connecticut. The documents had been marked as received on December 14, 1992, by "Benefits Contracts Legal."[2] Aetna then took the position that the assignment was effective when it received the assignment documents at its home office on December 14, 1992.[3] Accordingly, Aetna refused The New England's request to cancel the section 1035 exchange. On February 22, 1993, Aetna mailed a check in the amount of $13,-345.41, representing the cash surrender value of the policy, to The New England. The New England later returned the uncashed check to Aetna.

William Dennis brought suit against Aetna in Accomack Circuit Court on April 22, 1994. Aetna subsequently removed the action to this Court, based on diversity jurisdiction.[4] On September 23, 1994, Defendant Aetna filed a motion for summary judgment. On October 13, 1994, Plaintiff filed a response and a motion for summary judgment. The Court having heard oral argument on the cross-motions for summary judgment, this matter is now ripe for decision.

## II. Applicable Law

■ Disputes over life insurance contracts are determined by the law of the state where the insured was domiciled at the time she applied for the policy. Restatement (Second) of Conflict of Laws § 192 (1969). The parties have stipulated that Mrs. Dennis was a resident of Virginia at the time she applied for the Aetna policy, and that Virginia law governs this dispute.

## III. Analysis

■ The court may grant summary judgment on an issue only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light

---

1. This is a standard procedure in the insurance industry known as "saving the policy."

2. The "Benefits Contracts Legal" Department is located several miles from the 151 Farmington Avenue office, to which the documents were originally mailed. In Defendant's Answers to Plaintiff's Interrogatories, Ex. 4 to Plaintiff's Response to Defendant's Motion for Summary Judgment, Defendant stated that its Home Office mailing address is 151 Farmington, Hartford, Connecticut, but the Home Office actually consists of several locations in the Hartford area. All mail goes first to 151 Farmington Avenue and then is routed to the appropriate department via interoffice mail.

3. With respect to assignments, the Aetna policy provided:

No assignment will bind Aetna until it or a copy is received at the Home Office. When it

is received, the rights of the Owner and of the Beneficiary will then on be subject to the assignment. Aetna is not obliged to see that the assignment is valid.

Aetna policy at 5.

With respect to changes of ownership and beneficiaries, the policy provided:

Unless this policy states otherwise, the Owner and the Beneficiary, or either of them, may be changed. This may be done as often as desired during the lifetime of the Insured and before the maturity date. A signed request must be sent to Aetna. When Aetna gives its written acceptance, the change will take effect as of the date the request was signed. The change will be subject to any action which Aetna takes before its written acceptance.

*Id.*

4. Plaintiff is a resident of Virginia, Defendant is a Connecticut corporation, and the amount in controversy exceeds $50,000.00.

most favorable to the nonmoving party; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

■ A party who moves for summary judgment or against whom summary judgment is sought may submit as evidence "pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits" to support or rebut a summary judgment motion. Fed.R.Civ.P. 56(c). Supporting and opposing affidavits must be based on personal knowledge and must set forth facts that would be admissible in evidence. Fed.R.Civ.P. 56(e). Furthermore, the party moving for summary judgment need not supply "affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (emphasis in original). However, when a motion for summary judgment is made and supported with affidavits, as in this case, "an adverse party may not rest upon the mere allegations or denials in the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). Finally, the party who bears the burden of proving a particular element of a claim must "designate 'specific facts showing that there is a genuine issue for trial'" with respect to that element. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, *quoting* Fed. R.Civ.P. 56(e).

### A. Factual Disputes

#### 1. Aetna's Receipt of the 1035 Exchange Documents

■ Plaintiff contends that a material issue of fact exists as to when Aetna received the 1035 exchange documents. He argues

that Aetna has not proven conclusively that it received the documents on December 14, 1992, only that someone stamped the documents with that date.

Defendant presented the sworn testimony of three employees of the Benefits Contracts Legal Department describing the department's procedures for processing mail. Thomas Buchberger, Director of Aetna's Benefit Policy Services (formerly Benefits Contracts Legal), stated that incoming mail arrives in his department five times each day. Buchberger aff. at 1. One of the department's three administrative assistants opens the mail shortly after it arrives and stamps each piece of mail with the department's name and the receipt date. *Id.* Before the start of each business day, one of the assistants changes the stamp to show the current date. *Id.* Melody Wilcox and Judith Soto, two of the three administrative assistants in Benefits Contracts Legal in December 1992, testified that they followed this procedure. Wilcox deposition at 10; Soto deposition at 11–12.

Plaintiff has presented no evidence to suggest that the routine procedures were not followed in this case or that the documents were received after December 14, 1992. As stated above, Plaintiff cannot avoid summary judgment by merely denying Defendant's allegations; he must set forth facts that show a material issue exists. Defendant has presented copies of the documents bearing this date, and has established that its employees follow a specific routine of stamping incoming mail each day. Plaintiff has not rebutted these facts. Therefore, based on the uncontested facts, the Court finds that Aetna received the 1035 exchange documents on December 14, 1992.[5]

#### 2. Delivery of the Replacement Policy

■ Plaintiff also argues that a material issue of fact exists as to whether The New

---

**5.** Moreover, the Court notes the unlikelihood that these documents took ten days to travel by mail from The New England to Aetna. The ten-day delay from the time The New England mailed the documents to Aetna's home office on December 4, 1992, until the Benefits Contracts Legal Department received the documents on December 14, 1992, may be due in part to Aetna's internal

mail routing procedures. As noted earlier, all mail arrives first at Aetna's home office, and subsequently is forwarded to the appropriate department. *See supra* note 2. Considering that the documents arrived first at Aetna's home office, and then were sent to Benefits Contracts Legal, the documents probably arrived at Aetna's home office sometime before December 14.

England ever delivered a policy to Dorothy Dennis to replace the temporary policy. However, this issue is not material to the dispute between Mr. Dennis and Aetna. Whether The New England delivered a replacement policy is an issue to be resolved by Dorothy Dennis' estate and The New England, neither of which are parties in this action.

Specifically, Plaintiff argues that if Mrs. Dennis was not covered by a new policy, the 1035 exchange would be without consideration, and may have been be invalid. Plaintiff does not allege, however, that Mrs. Dennis was without coverage when she died. Mrs. Dennis possessed a temporary New England policy which stated that it was effective for 120 days from the date she completed Part II of the application, unless certain conditions occurred to terminate the temporary policy earlier. The Part II form Mrs. Dennis completed is dated October 16, 1992, and therefore would have been effective until sometime in February of 1993. Whether The New England completed its transaction with Mrs. Dennis by delivering a replacement policy has no relevance to the transaction between Mrs. Dennis and Aetna, and therefore is not a material issue of fact in this case.

In summary, because the Court finds no material issues of fact, disposition of this case turns solely on questions of law and interpretation of the Aetna life insurance policy. Accordingly, summary judgment is appropriate.

### B. Legal Issues

#### 1. The Assignment from Dorothy Dennis to The New England

The first legal issue in this case is whether Dorothy Dennis' Absolute Assignment of her life insurance policy took effect. The parties do not dispute that Dorothy Dennis signed the Absolute Assignment, intending irrevocably to transfer her interest in the Aetna policy to The New England. The parties do not dispute that the Aetna policy states that an assignment will bind Aetna when Aetna

receives a copy at its home office.[6] The undisputed fact is that Aetna received the assignment documents on December 14, 1992, and, according to the assignment provision of the policy,[7] the assignment was effective on that date.

However, Plaintiff argues that the assignment provision does not necessarily encompass changes of ownership or beneficiary, because an insured may assign a policy without relinquishing all ownership rights. For example, an insured might pledge her rights in a policy as collateral for a loan, and the assignee would only acquire ownership rights and the right to designate the beneficiary if the insured defaulted. Thus, Plaintiff reasons, an insured must comply with both the assignment and the change of ownership or change of beneficiary provisions when an assignment includes these changes. Plaintiff then argues that because Aetna did not give written acceptance to the ownership and beneficiary changes in the assignment documents, the assignment was ineffective.

Defendant counters this argument by noting that the Aetna policy provides different procedures for a change of beneficiary or ownership, versus an assignment.[8] Under the terms of the policy, Aetna must give written approval before a change of ownership or beneficiary is effective. However, the policy provides that an assignment is effective when Aetna receives the assignment document (or a copy) at its home office. Aetna contends that it was bound by the assignment and the surrender request on December 14, 1992.

Moreover, Aetna's routine procedure for processing section 1035 exchanges is to accept execution of an Absolute Assignment as a valid method of changing the owner and the beneficiary of the policy. See Aff. of Carol Mauri, at 2. The Aetna employee who supervises section 1035 exchanges declared that Aetna does not require a change of ownership or beneficiary form for a section 1035 exchange. Id. Aetna requires only that the insured submit an Absolute Assignment, the policy, and the executed surrender

---

6. See supra note 3.

7. See supra note 3.

8. See supra note 3.

request. *Id.* Plaintiff again has presented no evidence to the contrary.

The Virginia Code explicitly authorizes the assignment of life insurance policies. Va.Code § 38.2–3111 (Michie 1994). Moreover, the Virginia Supreme Court has stated that failure to comply with an insurer's procedures will not render an assignment invalid:

> [A]n assignment is valid if the assignor parts with his power of control over the chose in action, and it is shown that he intended the surrender to be irrevocable. Provisions of an insurance policy requiring written notice of an assignment or a change of beneficiary to be given to the insurer are for the benefit of the insurer.

*Fidelity & Deposit Co. v. Moore,* 177 Va. 341, 348, 14 S.E.2d 307 (1941). Similarly, two federal district courts, in cases decided under Virginia law, have held that an insurer's procedures for changing a beneficiary are for the benefit of the insurer, and that the insurer may waive compliance with its procedures. *Shenandoah Life Ins. Co. v. Harvey,* 242 F.Supp. 680, 682–83 (D.Md.1965); *Provident Life & Accident Ins. Co. v. Dotson,* 93 F.Supp. 538, 540–41 (S.D.W.Va.1950). Therefore, even assuming that the policy did require Aetna's written acceptance before the insured could change the owner or beneficiary through an assignment document, only Aetna could challenge noncompliance. *See id.* If the insurer does not insist upon compliance with these procedures, an unvested beneficiary has no right to protest. *Dotson,* 93 F.Supp. at 540; *see also Bohannon v. Manhattan Life Ins. Co.,* 555 F.2d 1205, 1211 (5th Cir.1977) (applying Georgia law); *Provident Mutual Life Ins. Co. v. Ehrlich,* 508 F.2d 129, 134 (3d Cir.1975) (applying Pennsylvania law).

Additionally, most jurisdictions apply the equitable principle that a policy owner's attempt to change the beneficiary should be allowed when the owner does everything within his power to effectuate the change. *See, e.g., Cipriani v. Sun Life Ins. Co.,* 757 F.2d 78 (3d Cir.1985) (applying Pennsylvania law); *Murdock v. Equitable Life Assurance Soc'y,* 714 F.2d 474, 477 (5th Cir.1983) (ap-

plying Mississippi law); *Connecticut Gen. Life Ins. Co. v. Gulley,* 668 F.2d 325, 327 (7th Cir.1982) (applying Illinois law), *cert. denied, Balsley v. Gulley,* 456 U.S. 974, 102 S.Ct. 2237, 72 L.Ed.2d 848 (1982); *Provident Mutual Life Ins. Co. v. Ehrlich,* 508 F.2d 129, 132–33 (3d Cir.1975) (applying Pennsylvania law); *United Servs. Life Ins. Co. v. Moss,* 303 F.Supp. 72, 75–76 (W.D.Va.1969); *Occidental Life Ins. Co. v. Row,* 271 F.Supp. 920, 925–26 (S.D.W.Va.1967); *Jackson v. Shenandoah Life Ins. Co.,* 4 Va.Cir.Ct. 499, 500 (City of Alexandria 1979). Therefore, assuming *arguendo* that Plaintiff's interpretation of the policy is correct, and the policy required compliance with both the assignment procedures and the change of beneficiary and ownership procedures, this equitable rule applies to effectuate Mrs. Dennis' intent.

Clearly, at the time of Mrs. Dennis' death, both she and The New England had taken all possible steps to conclude the section 1035 exchange. Mrs. Dennis and The New England both executed the Absolute Assignment, which requested that The New England replace Mr. Dennis as beneficiary. The New England mailed the 1035 exchange documents to Aetna, and when it did not receive a response, pursued the matter through a phone call less than two weeks later. When Aetna stated that it had no record of receiving the documents, The New England promptly faxed copies to Aetna. Plaintiff does not base his claim of noncompliance with the policy on any failure or inaction by Mrs. Dennis or The New England, but rather on the fact that Aetna did not give written acceptance to the change of ownership and beneficiary. Mrs. Dennis and The New England complied with Aetna's procedures to the fullest possible extent. Under the law, then, their intent is not thwarted because of Aetna's failure to perform a simple, ministerial act.

In summary, the Court agrees with Aetna's assertion that, under the terms of its policy, the Absolute Assignment was effective at the time Aetna received it at its home office, which was on or before Decem-

ber 14, 1992.[9] The policy specified separate procedures for assignments than for changes of ownership and beneficiaries, and compliance with the assignment provision was entirely sufficient to effectuate the assignment from Mrs. Dennis to The New England. Furthermore, even if compliance with the change of ownership and beneficiary provision was necessary to effectuate the assignment, such a provision is for the benefit of Aetna, and Plaintiff is not entitled to require compliance. Therefore, the Absolute Assignment from Mrs. Dennis to The New England took effect on December 14, 1992, pursuant to the terms of the policy.

### 2. Validity of The New England's Surrender Request

The assignee of an insurance contract "stands in the shoes" of the assignor, and receives the same rights and liabilities under the policy as the insured held before the transfer. *In re EPIC Mortgage Ins. Litig.*, 701 F.Supp. 1192, 1246 (E.D.Va.1988), *aff'd in part, rev'd in part, Foremost Guar. Corp. v. Meritor Sav. Bank*, 910 F.2d 118 (4th Cir.1990); *Hebert v. Pace*, 351 So.2d 529, 530 (Miss.1977); *Hubbard v. Dickey*, 224 Ark. 382, 274 S.W.2d 60, 62 (1954); *Moon v. Williams*, 135 So. 555, 557 (Fla.1931). As the assignee of Mrs. Dennis' policy, The New England had the right to surrender the policy and request payment of the cash surrender value. The policy does not provide any particular procedures for requesting the cash surrender value, but simply states that "[t]his policy may be surrendered for its Surrender Value at any time while the insured is alive and before the Maturity Date." Aetna policy at 8.

The exercise of a surrender right, pursuant to the terms of the policy, is an acceptance of the insurer's open offer to pay the cash surrender value. *Pacific States Life Ins. Co. v. Bryce*, 67 F.2d 710, 712 (10th Cir.1933); *LaDow v. New England Mutual Life Ins. Co.*, 727 F.Supp. 1399, 1401 (D.Kan. 1989); 43 Am.Jur.2d § 741 (1982); 6 Couch on Insurance § 32:183 (Rhodes 1985). The rights of the parties become fixed immediately on insured's exercise of such option, and, where insured demands the cash surrender value of his policy and at the same time surrenders it to the insurance company, he is then deemed to complete the exercise of his option by accepting the open offer of insurer.... [T]he fact that actual payment of the money may be postponed until after the death of the insured does not abrogate the completed surrender or reinstate the policy so as to permit recovery of the insurance.

*Occidental Life Ins. Co. v. Templeton*, 219 Ga. 39, 131 S.E.2d 530, 532–33 (1963). As Mrs. Dennis' assignee, The New England had the right to "stand in her shoes" and exercise the surrender right under the Aetna policy. Once The New England submitted its surrender request, the rights of the parties became fixed, and Aetna became obligated to pay The New England the cash surrender value. *See Lipman v. Equitable Life Assurance Soc'y*, 58 F.2d 15, 18 (4th Cir. 1932). Aetna accordingly honored the surrender request and tendered payment to The New England of the cash value of the policy.

### IV. Conclusion

The Court holds that, upon Aetna's receipt of the 1035 exchange documents on December 14, 1994, the assignment from Dorothy Dennis to The New England became effective, and The New England acquired all of Mrs. Dennis' rights and obligations under the policy. These rights included the option of requesting the cash surrender value of the policy, which The New England exercised on December 14, 1992, when it surrendered the policy and requested payment of the policy's cash value. At this time, the parties' rights under the policy were fixed, and Aetna was obligated to pay The New England the cash value of the policy, which it did. For these reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

The Clerk is DIRECTED to send a copy of this Order to all counsel of record.

It is so ORDERED.

---

9. *See supra* at 1004–1005.